**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**BISCAYNE TELEVISION CORPORATION, Respondent.**

**No. 18452.**

United States Court of Appeals Fifth Circuit.

Oct. 12, 1964.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Melvin Pollack, Atty., Washington, D. C., Harold A. Boire, Director, Tampa, Fla., for petitioner.

Jerry B. Crockett, Miami, Fla., for respondent.

Before TUTTLE, Chief Judge, BELL, Circuit Judge, and WHITEHURST, District Judge.

PER CURIAM.

This case is before the court on a petition by the National Labor Relations Board for enforcement of its supplemental order issued upon the remand of its original petition to enforce.

In July 1958, Biscayne was conducting its newsgathering operations with six employees. At this time, the station changed the format of its 6:30 P.M. news broadcast; a program that had theretofore consisted predominantly of newsreels was converted into one consisting predominantly of news reporting and analysis by a commentator. On August 12, 1958, three of the six news employees were discharged and a fourth was demoted.

These alterations of the work force led to proceedings before the Board charging Biscayne with violations of § 8(a) (1) and (3) of the Labor Act, 29 U.S.C.A. § 158(a) (1) and (3). Biscayne defended by arguing that the discharges and demotion were economically justified because of the change in format of the 6:30 news program. However, the Board found that Biscayne made the changes because of the union activity of the employees and held that Biscayne had thereby violated § 8(a) (1) and (3) of the Act. As a remedy, it ordered Biscayne to cease and desist from the unfair labor practices and to grant reinstatement and

back pay to the employees involved. This court sustained the Board's unfair labor practice findings, but remanded for reconsideration as to what extent reinstatement and back pay should have been awarded as a remedy. National Labor Relations Board v. Biscayne Television Corp., 5 Cir., 1961, 289 F.2d 338. This action was premised on the fact that the Board had recognized that at some time subsequent to the discriminatory discharges, Biscayne might have altered its work force for purely economic motives; i. e., that even if there had never been any antiunion discrimination, the employees would eventually have been discharged and demoted anyway. Our holding was that if upon remand the employer could prove that this was the case, back pay should be awarded only from the date of discharge and demotion, August 12, 1958, up to the date when the changes would have been made for purely economic motives.

In the supplemental proceedings before the Board, Biscayne had the burden of proving that the discharges and demotion would have occurred sometime subsequent to August 12, 1958, for purely economic motives. Cf. National Labor Relations Board v. Reed & Prince Mfg. Co., 1 Cir., 1942, 130 F.2d 765, 768. The Board held that Biscayne failed to carry this burden and issued a supplemental order granting back pay from August 12 until the employees became ineligible for back pay by reason of death, resignation, and refusal to accept reinstatement. The Board now petitions for enforcement of this supplemental order.

We agree that Biscayne failed to sustain its burden of proof on remand and consequently grant enforcement of the Board's supplemental order. The proof adduced by Biscayne on remand consisted primarily of a relitigation of its contention that the discharges and demotions of August 12, 1958, occurred for economic rather than discriminatory motives. This contention, of course, had already been decided adversely to Biscayne in the prior Board proceedings and in the prior enforcement proceedings

before this court. It was therefore the law of the case on remand that Biscayne's actions on August 12 stemmed from discriminatory motives. It was incumbent on Biscayne to accept as a datum that the August 12 discharges were discriminatory, and to show that nevertheless economically motivated discharges would have occurred at some subsequent date. This burden could not be met by showing that the August 12 discharges themselves were economically motivated.

The only other evidence presented by Biscayne was evidence tending to show that after August 12 its news operations were carried on successfully with a reduced work force. This success proves only that Biscayne realized an economic dividend from its antiunion activity; it does not establish that economically motivated discharges would have occurred, and when they would have occurred, absent the antiunion discharges of August 12, 1958.

Biscayne having failed to sustain its burden of proof on remand, the supplemental order of the Board is hereby enforced.