**In re UNIMET
CORPORATION, Debtor.**

**UNITED STEELWORKERS OF
AMERICA, Plaintiff–Appellant,**

v.

**UNIMET CORPORATION,
Defendant–Appellee.**

No. 87–3211.

United States Court of Appeals,
Sixth Circuit.

Argued Jan. 25, 1988.

Decided March 22, 1988.

James S. Gwin, Gutierrez, Mackey & Gwin Co., Canton, Ohio, Paul Whitehead (argued), United Steelworkers of America, Pittsburgh, Pa., for plaintiff-appellant.

Lee D. Powar, Mark E. Staib (argued), Harry D. Mercer, Eric D. Fingerhut, Harlin, Loeser, Freedheim, Dean & Wellman Co., Cleveland, Ohio, David M. Hunter, Jeffrey T. Heintz, Brouse & McDowell, J. Bruce Hunsicker, Akron, Ohio, for defendant-appellee.

Before MILBURN and GUY, Circuit Judges, and CONTIE, Senior Circuit Judge.

MILBURN, Circuit Judge.

Plaintiff-appellant United Steelworkers of America ("United Steelworkers" or "Union") appeals from the post-judgment order of the district court holding that defendant-appellee Unimet Corporation ("Unimet"), the debtor-in-possession under Chapter 11 of the Bankruptcy Code, was not required to pay insurance premiums for retiree benefits under the terms of a collective bargaining agreement. For the reasons that follow, we reverse the judgment of the district court to the extent that it held that 11 U.S.C. § 1113's protection does not apply to retirees covered by provisions in a collective bargaining agreement.

## I.

Unimet formerly operated a manufacturing plant in Canton, Ohio. On November 7, 1983, Unimet entered into a three-year collective bargaining agreement with United Steelworkers. The agreement required Unimet to pay one-half of the premiums for certain retirees' health insurance and the full amount of the premium for all retirees' life insurance.

However, on May 11, 1984, all Unimet employees at the Canton facility were laid off when the company closed its plant.

Thereafter, on March 8, 1985, Unimet sought protection under Chapter 11 of the Bankruptcy Code. At that time, Unimet's only remaining obligation under the collective bargaining agreement was the payment of insurance premiums on behalf of the retirees.

After Unimet closed the Canton facility, it informed United Steelworkers that it wished to eliminate the health and life insurance benefits for retirees. The union rejected this proposal, but advised Unimet that it was willing to consider any further modifications the company wished to propose. Unimet responded by filing a motion in the bankruptcy court to reject the collective bargaining agreement pursuant to 11 U.S.C. § 1113.

On August 6, 1985, the bankruptcy court issued an order denying Unimet's motion to reject the collective bargaining agreement because it failed to carry its burden of proof with regard to the factors enumerated in 11 U.S.C. § 1113(b). No appeal was taken from that order.

Nevertheless, Unimet continued to advocate the position that the Bankruptcy Code did not authorize payment of the insurance premiums required by the collective bargaining agreement. In order to protect itself from the possibility that other creditors would challenge an attempt to pay the premiums required by the unrejected collective bargaining agreement, Unimet filed an application to pay the premiums as administrative expenses pursuant to 11 U.S.C. § 503(b). It then proceeded to, in effect, argue against the motion by advocating the position that payment of retiree insurance premiums could not be characterized as an administrative expense. In response, United Steelworkers argued that because section 1113 applies to all provisions of a collective bargaining agreement, Unimet's failure to carry its burden of proof under subsection 1113(b) rendered it liable for premium payments under the terms of the contract.

In an order entered on September 27, 1985, the bankruptcy court adopted the position advanced by Unimet. As an initial matter, the bankruptcy court retreated

from the premise upon which its August 6, 1985, judgment was based. Rather than adhering to its initial decision that Unimet was required to comply with the collective bargaining agreement because the requirements of 11 U.S.C. § 1113(b) had not been satisfied, the bankruptcy court concluded that section 1113 does not protect the collectively bargained rights of retirees. To support this conclusion, the bankruptcy court reasoned that section 1113 speaks in terms of "employees." Because retirees are not "employees" for the purpose of section 8 of the National Labor Relations Act, *see Allied Chemical & Alkali Workers of America, Local Union No. 1 v. Pittsburgh Plate Glass Co.,* 404 U.S. 157, 92 S.Ct. 383, 30 L.Ed.2d 341 (1971), the bankruptcy court concluded that they should not be considered "employees" for the purpose of analysis under 11 U.S.C. § 1113.

After concluding that section 1113 did not provide authority for the continuation of retiree insurance benefits, the bankruptcy court considered whether these expenses were properly characterized as administrative expenses under 11 U.S.C. § 503. Because it concluded that this obligation did not arise after the filing of the petition and was not necessary for the preservation of the estate, the bankruptcy court held that the insurance premium payments were not expenses of administration. Accordingly, Unimet was denied authorization to make the premium payments as required by the collective bargaining agreement.

United Steelworkers then appealed to the district court, which reversed the judgment of the bankruptcy court on November 18, 1986. The basis for the district court's decision was its belief that H.R. 5490 amended section 1113(f) to explicitly provide protection for retirees.[1] H.R. 5490, however, was never enacted into law.

Accordingly, Unimet filed a motion to reconsider the district court's November 18, 1986, judgment. Unimet pointed out that H.R. 5490, although passed by the House of Representatives, had never been passed by the Senate. It also pointed to other legislative activity which it contended supported the conclusion that section 1113 does not apply to retirees.

On January 21, 1987, the district court entered a post-judgment order adopting Unimet's position. It affirmed the judgment of the bankruptcy court that 11 U.S.C. § 1113 does not apply to retirees and that the insurance premiums were not properly characterized as administrative expenses. It is from this judgment that United Steelworkers appeals, arguing that 11 U.S.C. § 1113 applies to retirees, and that subsequent legislative activity should have no bearing on this court's decision.

## II.

### A.

■ A discussion of 11 U.S.C. § 1113 is not complete without consideration of the circumstances precipitating its enactment. In 1984, the Supreme Court decided *NLRB v. Bildisco & Bildisco,* 465 U.S. 513, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984). Although the Court unanimously agreed that an unexpired collective bargaining agreement is an executory contract which could be rejected pursuant to 11 U.S.C. § 365(a), it split 5–4 on the issue of whether the debtor-in-possession could be found guilty of an unfair labor practice if it rejected the agreement prior to court approval. The majority concluded that the imposition of such sanctions would deprive the debtor-in-possession of the flexibility contemplated by the Bankruptcy Code.

> [T]he Board is precluded from, in effect, enforcing the terms of the collective-bargaining agreement by filing unfair labor practice charges against the debtor-in-

---

1. H.R. 5490 provided:
   > Be it enacted by the Senate and House oi Representatives of the United States of America in Congress assembled, That section 1113(f) of title 11, United States Code, is amended by inserting "(including any provi-

sion relating to benefits for retired former employees)" after "provisions" the first place it appears.
132 Cong.Rec. H8551 (daily ed. September 29, 1986).

possession for violating § 8(d) of the NLRA. Though the Board's action is nominally one to enforce § 8(d) of that Act, the practical effect of the enforcement action would be to require adherence to the terms of the collective bargaining agreement. But the filing of the petition in bankruptcy means that the collective-bargaining agreement is no longer immediately enforceable, and may never be enforceable again. Consequently, Board enforcement of a claimed violation of § 8(d) under these circumstances would run directly counter to the express provisions of the Bankruptcy Code and to the Code's overall effort to give a debtor-in-possession some flexibility and breathing space. We conclude that from the filing of a petition in bankruptcy until formal acceptance, the collective-bargaining agreement is not an enforceable contract within the meaning of NLRA § 8(d).

*Bildisco*, 465 U.S. at 532, 104 S.Ct. at 1199 (citation omitted).

The legislative response to *Bildisco* was swift. Only five months after the decision, Congress enacted 11 U.S.C. § 1113 as part of the 1984 amendments to the Bankruptcy Code.[2] *Subsection 1113(a) provides* that the trustee or debtor-in-possession "may assume or reject a collective bargaining agreement only in accordance with the provisions of this section." *Subsection 1113(b) requires* the trustee or debtor-in-possession to make a proposal to the union providing for employee benefit modifications that are necessary to permit the reorganization of the debtor and to assure that all creditors, the debtor, and all other affected parties are treated fairly. The debtor must also provide the union with all information necessary to effectively evaluate the proposal. *Subsection 1113(b) further requires* meetings between the debtor-in-possession and the union.

*Subsection 1113(c) provides* that the court shall approve an application for rejection of the collective bargaining agreement only if it finds that the debtor-in-possession has made a proposal that fulfills the requirements of subsection (b); that the union has refused to accept the proposal without good cause; and that the balance of the equities favors rejection of the contract.

*Subsection 1113(c) contains a timetable* during which the bankruptcy court must rule on the petition. *Subsection 1113(e) contains a provision allowing emergency relief* as necessary to prevent irreparable damage to the debtor's business. Finally, *subsection 1113(f) provides that "[n]o provision of this title shall be construed to permit a trustee to unilaterally terminate or alter any provisions of a collective bargaining agreement prior to compliance with the provisions of this section."* (Emphasis supplied).

Two separate and distinct lines of argument are presented by the parties for the court's consideration. The first line of argument concerns the literal interpretation of section 1113. United Steelworkers argues that subsection 1113(f) means what it says—that the debtor-in-possession, Unimet, was required to comply with *all* provisions of the collective bargaining agreement *unless and until rejection was permitted by the court.* Because Unimet was unable to carry its burden of proof with regard to the factors enumerated in subsection 1113(b)(1), United Steelworkers insists that rejection should have been denied and Unimet required to make premium payments as provided for by the contract.

On the other hand, Unimet argues that 11 U.S.C. § 1113 was narrowly drafted in response to the specific problem presented in *Bildisco*, and that it does not even apply to the circumstances of the present case. Unimet further contends that the insurance premiums required under the collective bargaining agreement are not properly payable as administrative expenses, a contention with which the union does not appear to differ. Accordingly, Unimet argues that the Bankruptcy Code contains no authorization for continuation of the premium payments, and thus the bankruptcy court and the district court correctly concluded that Unimet was not required to make those

---

2. The full text of 11 U.S.C. § 1113 is attached hereto as Appendix I.

payments even though required by the collective bargaining agreement.

The second line of argument concerns the significance, if any, of recent legislative activity regarding section 1113. United Steelworkers argues that certain recent legislative developments have absolutely no effect on the interpretation of section 1113 and thus should not be considered by the court in its disposition of the present case. However, Unimet argues that Congress has had ample opportunity to enact an amendment to section 1113 which would explicitly state that retiree benefits are included within the scope of section 1113. Because Congress has declined to do so, Unimet argues that this court cannot make a policy decision that Congress itself has declined to make.

### B.

Unimet argues that we should adopt a narrow interpretation of *Bildisco* and the congressional response thereto. Accordingly, Unimet contends that we should affirm the holdings of the district and bankruptcy courts that 11 U.S.C. § 1113 does not apply to retiree benefits.

According to Unimet, the *Bildisco* decision announced a narrow rule designed to apply to a problem not presented by this dispute. Specifically, Unimet argues that *Bildisco* held *only* that an employer was free to unilaterally alter the terms of a collective bargaining agreement without fear of subjecting itself to liability for violations of sections 8(a)(5) and 8(d) of the National Labor Relations Act ("NLRA"), 29 U.S.C. §§ 158(a)(5) and 158(d). Unimet contends that as retirees are not "employees" within the meaning of section 8 of the NLRA, their rights are not mandatory subjects of bargaining and thus are not enforceable by resort to unfair labor practice proceedings. *See Pittsburgh Plate Glass Co.*, 404 U.S. at 157, 92 S.Ct. at 386. Consequently, Unimet contends that the Court in *Bildisco* was not concerned with enforcement of retirees' rights, and that the legislative response to *Bildisco* should be interpreted to be equally unconcerned with those rights.

Our reading of section 1113 and its legislative history [3] convinces us that this argument is untenable. First and foremost, the express language of section 1113(f) makes no distinction between mandatory and permissive subjects of bargaining. Nor does this subsection purport to protect only "employees." Rather, section 1113(f) states that "[n]o provision of this title shall be construed to permit a trustee to unilaterally terminate or alter *any provisions* of a collective bargaining agreement prior to compliance with the provisions of this section." (Emphasis supplied). Thus, the plain language of the statute is directly contrary to Unimet's argument.

Second, there is some indication that *Congress* believed that *Bildisco* rendered vulnerable the benefits bargained for on behalf of retirees. Senator Moynihan expressed concern that, in the wake of *Bildisco*, "[a]ccrued pension rights, for which employees may have worked years to accumulate, also may be eliminated by a single declaration by the company." 130 Cong. Rec. S8900 (daily ed. June 29, 1984) (emphasis supplied). Congressman Vento criticized *Bildisco* because it permitted debtors-in-possession to unilaterally modify "the jobs, salaries and wages, health and life insurance benefits, fringe benefits, *and pension rights* of every worker." 130 Cong.Rec. H1831 (daily ed. March 21, 1984) (emphasis supplied). Senator Packwood, one of the sponsors of the legislation, expressed his belief that *section 1113 would require the employer to comply with "all the provisions of the contract."* 130 Cong.Rec. S6190 (daily ed. May 22, 1984) (emphasis supplied). While these statements cannot, in isolation, fully support our conclusion, they do shed some light upon congressional interpretation of *Bildisco* and the perceived need for a broadly sweeping response.

A change in the language of the statute during the drafting process also provides

---

**3.** Because no official report accompanied 11 U.S.C. § 1113, the legislative history contains only the statements read into the Congressional Record.

support for United Steelworkers' argument. When the legislation was passed by the House, it provided that "[n]o provision of this title shall be construed to permit the trustee unilaterally to terminate or alter any of the wages, *hours, terms and conditions* established by a collective bargaining agreement." 130 Cong.Rec. H1842 (daily ed. March 21, 1984) (emphasis supplied). The language concerning "wages, hours, terms and conditions" of employment closely parallels the language of section 8 of the NLRA with regard to mandatory subjects of bargaining. Had this language appeared in section 1113 as enacted, its adoption arguably would have supported Unimet's position that section 1113 applies only to those portions of the collective bargaining agreement enforceable through unfair labor practice proceedings.

However, in section 1113 as finally enacted, the "terms and conditions" language has been replaced with less restrictive language prohibiting modification of *any provision* of the collective bargaining agreement without prior court approval. Although Unimet argues that reliance on this change "is at the very least irresponsible," we believe that it does provide some support for the union's position.[4]

We conclude that the union's argument regarding the scope of section 1113 is the stronger one. Accordingly, the judgment of the district court, to the extent that it held that section 1113's protections do not apply to retirees, is reversed.

## C.

■ Unimet also argues, as the district court ruled, that the insurance premiums

are not properly payable as administrative expenses, and thus it has no duty to pay them. In order for an obligation to be characterized as an administrative expense pursuant to 11 U.S.C. § 503(b), two criteria must be satisfied. First, the consideration supporting the right to payment must have been given to the debtor-in-possession. Second, the consideration must have benefitted the estate. *See, e.g., In re White Motor Corp,* 831 F.2d 106 (6th Cir.1987); *In re Jartran, Inc.,* 732 F.2d 584 (7th Cir. 1984).

Assuming without deciding that insurance premium payments on behalf of retirees are not properly payable as administrative expenses, our conclusion that 11 U.S.C. § 1113 encompasses retiree benefits leads to the conclusion that qualification as an administrative expense is not necessary for the union to prevail. As discussed above, section 1113 unequivocally prohibits the employer from *unilaterally* modifying *any provision* of the collective bargaining agreement.[5] Accordingly, we hold that Unimet cannot escape its obligations in this regard merely because the requirements of section 503 arguably have not been satisfied.

## D.

■ The final issue for our determination is the effect, if any, of recent legislative developments upon the disposition of the present case. As the district court noted in its post-judgment order, on October 18, 1986, Congress enacted Public Law 99–591, which provides in relevant part:

4. The union also places heavy reliance on the Second Circuit's decision in *In re Century Brass Products, Inc.,* 795 F.2d 265 (2d Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 433, 93 L.Ed.2d 383 (1986). In *Century Brass,* the union argued that it had "good cause" to reject the employer's contract modifications with regard to retiree rights because the union was not authorized to bargain about those rights. The Second Circuit disagreed, concluding that the union has a duty to represent retirees for the purposes of negotiation under section 1113. The court was influenced, at least in part, by the notion that the retiree benefits in *Century Brass* "vitally affected" the interests of active employees within the

meaning of *Pittsburgh Plate Glass, supra.* That factor is not present in the case now before us, and thus we must decide whether the absence of this factor renders the provisions of section 1113 inoperable. We conclude, for the reasons discussed above, that it does not.

5. For this reason, Unimet's reliance on *Trustees of the Amalgamated Insurance Fund v. McFarlin's, Inc.,* 789 F.2d 98 (2d Cir.1986), is misplaced. The payment in *McFarlin's* was a statutorily imposed withdrawal liability, and not a payment required by a collective bargaining agreement subject to section 1113.

(a) Notwithstanding any provision of chapter 11 of title 11, United States Code, the trustee shall pay benefits until May 15, 1987 to retired former employees under a plan, fund, or program maintained or established by the debtor prior to filing a petition (through the purchase of insurance or otherwise) for the purpose of providing medical, surgical, or hospital care benefits, or benefits in the event of sickness, accident, disability, or death.

(b) This section is effective with respect to cases commenced under chapter 11, of title 11, United States Code, in which a plan for reorganization has not been confirmed by the court and in which any such benefit is still being paid on October 2, 1986, and in cases that become subject to chapter 11, title 11, United States Code, after October 2, 1986.

Act of October 30, 1986, Pub.L. No. 99–591, 1986 U.S.Code Cong. & Admin.News (100 Stat.) 3341–74.

It is clear that this enactment, by its terms, does not apply to the Unimet bankruptcy. The district court apparently believed that, because the legislation does not apply to Unimet, it served as further support for the conclusion that section 1113 does not provide authorization for the payments at issue in the present case.[6] We disagree.

An examination of the legislative history surrounding Public Law 99–591 indicates that it was enacted as a stop gap measure designed primarily to assure the continuation of benefits to retirees affected by the LTV bankruptcy proceedings. The sponsors of the legislation unequivocally stated that it was not designed to affect interpretation of section 1113.

MR. THURMOND.... This provision will provide this protection until May 15, 1987, in order to give Congress time to act on the broader question of how re-

tiree benefits are to be treated under the Bankruptcy Code, and especially under section 1113.

This new provision is not to be read or interpreted as affecting the interpretation of section 1113 of the Code.... It was only with this understanding that I have consented to allow the Senate to consider this amendment in the closing days of the session.

Mr. President, I want to make it completely clear, as Senators Heinz and Metzenbaum understand, that this amendment does not affect the interpretation of § 1113 in any way.

132 Cong.Rec. S14872 (daily ed. October 3, 1986). Thus, even if we were willing to entertain the notion that legislative activity *subsequent to* a statutory enactment is a reliable indicator of congressional intent in enacting legislation, given the unqualified pronouncement of the sponsors of Public Law 99–591, we are unwilling to accord it any weight in our analysis.

### III.

In sum, our reading of 11 U.S.C. § 1113 leads us to the conclusion that Congress intended to give broad protection to collectively bargained for rights which are threatened by a corporate reorganization under Chapter 11 of the Bankruptcy Code. Our conclusion that 11 U.S.C. § 1113 applies to all provisions of a collective bargaining agreement does no violence to the plain language of the statute or the legislative history as we perceive it. By requiring the debtor-in-possession to establish that the equities militate in favor of rejection of the benefits collectively bargained for on behalf of retirees, we believe we strike the appropriate balance between the interests of the debtor-in-possession in effectuating a reorganization and the interests of retirees who have achieved through the collective bargaining process some

---

**6.** The district court also relied upon a statement issued by the President upon the signing of Public Law 99–656, which apparently extended the applicability of Public Law 99–591 to an entity unrelated to Unimet. *See* Act of November 14, 1986, Pub.L. No. 99–656, 1986 U.S.Code Cong. & Admin.News (100 Stat.) 3668. The President expressed reservations about the constitutionality of Public Law 99–656 insofar as it appeared to be a bankruptcy law of nonuniform application. The presidential statement clearly has no relevance to these proceedings, and, to the extent that the district court relied upon it, the court was in error.

886

measure of security. Accordingly, the judgment of the district court is REVERSED to the extent that it held that 11 U.S.C. § 1113 does not protect the interests of retirees. This case is REMANDED to the district court for further proceedings consistent with this opinion.

### Appendix 1

### REORGANIZATION

### SECTION 1113 (11 U.S.C. § 1113)

§ 1113. Rejection of collective bargaining agreements

(a) The debtor in possession, or the trustee if one has been appointed under the provisions of this chapter, other than a trustee in a case covered by subchapter IV of this chapter and by title I of the Railway Labor Act, may assume or reject a collective bargaining agreement only in accordance with the provisions of this section.

(b)(1) Subsequent to filing a petition and prior to filing an application seeking rejection of a collective bargaining agreement, the debtor in possession or trustee (hereinafter in this section "trustee" shall include a debtor in possession), shall—

(A) make a proposal to the authorized representative of the employees covered by such agreement, based on the most complete and reliable information available at the time of such proposal, which provides for those necessary modifications in the employees benefits and protections that are necessary to permit the reorganization of the debtor and assures that all creditors, the debtor and all of the affected parties are treated fairly and equitably; and

(B) provide, subject to subsection (d)(3), the representative of the employees with such relevant information as is necessary to evaluate the proposal.

(2) During the period beginning on the date of the making of a proposal provided for in paragraph (1) and ending on the date of the hearing provided for in subsection (d)(1), the trustee shall meet, at reasonable times, with the authorized representative to confer in good faith in attempting to reach mutually satisfactory modifications of such agreement.

(c) The court shall approve an application for rejection of a collective bargaining agreement only if the court finds that—

(1) the trustee has, prior to the hearing, made a proposal that fulfills the requirements of subsection (b)(1);

(2) the authorized representative of the employees has refused to accept such proposal without good cause; and

(3) the balance of the equities clearly favors rejection of such agreement.

(d)(1) Upon the filing of an application for rejection the court shall schedule a hearing to be held not later than fourteen days after the date of the filing of such application. All interested parties may appear and be heard at such hearing. Adequate notice shall be provided to such parties at least ten days before the date of such hearing. The court may extend the time for the commencement of such hearing for a period not exceeding seven days where the circumstances of the case, and the interests of justice require such extension, or for additional periods of time to which the trustee and representative agree.

(2) The court shall rule on such application for rejection within thirty days after the date of the commencement of the hearing. In the interests of justice, the court may extend such time for ruling for such additional period as the trustee and the employees' representative may agree to. If the court does not rule on such application within thirty days after the date of the commencement of the hearing, or within such additional time as the trustee and the employees' representative may agree to, the trustee may terminate or alter any provisions of the collective bargaining agreement pending the ruling of the court on such application.

(3) The court may enter such protective orders, consistent with the need of the authorized representative of the employee to evaluate the trustee's proposal and the application for rejection, as may be necessary to prevent disclosure of information provided to such representative where such disclosure could compromise the position of

the debtor with respect to its competitors in the industry in which it is engaged.

(e) If during a period when the collective bargaining agreement continues in effect, and if essential to the continuation of the debtor's business, or in order to avoid irreparable damage to the estate, the court, after notice and a hearing, may authorize the trustee to implement interim changes in the terms, conditions, wages, benefits, or work rules provided by a collective bargaining agreement. Any hearing under this paragraph shall be scheduled in accordance with the needs of the trustee. The implementation of such interim changes shall not render the application for rejection moot.

(f) No provision of this title shall be construed to permit a trustee to unilaterally terminate or alter any provisions of a collective bargaining agreement prior to compliance with the provisions of this section.