**In re ROTH AMERICAN, INC.**

**Bankruptcy No. 5–88–00056.**

United States Bankruptcy Court,
M.D. Pennsylvania.

Oct. 12, 1990.

John H. Doran, Robert C. Nowalis, Doran & Nowalis, Wilkes–Barre, Pa., for Roth American.

Jeffrey Baddeley, Squire, Sanders & Dempsey, Cleveland, Ohio, for Unsecured Creditors Committee.

Patrick J. Szymanski, Christy Concannon, Baptiste & Wilder, P.C., Washington, D.C., John J. Dunn, Sr., Dunn & Byrne, Scranton, Pa., for Teamsters Local 401.

## MEMORANDUM AND ORDER

THOMAS C. GIBBONS, Bankruptcy Judge:

Before the Court for determination are objections by the debtor, Roth American, Inc. (hereinafter "debtor") to three proofs of claim filed on behalf of former employees of the debtor represented by Local Union No. 401 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, (hereinafter "Union"). Two of the proofs of claim, namely Claims # 204 and # 205, seek administrative priority status for severance pay and vacation pay respectfully. Claim # 151 requests a breach of contract claim in the amount of $6,569,536.46. For the reasons provided herein, we find that Claims # 204 and # 205 will be accorded administrative priority only for the amount of severance and vacation pay earned post-petition and the portion of each claim earned pre-petition will be divided into either a priority or unsecured claim as the Bankruptcy Code dictates; and that Claim # 151 is granted only to the extent of the difference between the reduced wages the employees earned during a two week post-petition period and the wages actually called for in the Collective Bargaining Agreement.

Before proceeding to the substantive issues, we note that at a hearing on the objections the parties stipulated as to the amount of severance and vacation pay each employee would receive and further agreed as to how each severance and vacation calculation would be divided into unsecured, priority or administrative status. These agreements were contingent on the Court's acceptance of the debtor's theory of law as applied to the facts of this case. We accept the calculations stipulated by the parties and found in Debtor's Exhibit 1 as submitted into evidence at time of hearing. The parties did not reach an agreement concerning the severance pay for four employees, namely, Thomas Comitz, James Grilz, James O'Day, Sr., and Louis Caskey, but indicated they would continue discovery and reach an agreement as to whether these employees would receive any severance pay. The reasoning of this Opinion will apply and if severance and vacation pay is due these employees, it will be calculated on the same basis.

The facts are as follows. Debtor was a toy manufacturing company which employed in excess of 200 employees represented by the Union. Both parties operated under a Collective Bargaining Agreement effective from November 1, 1985 through June 30, 1988. This Agreement required the debtor to pay the employees, depending on length of service, from one to four weeks of vacation pay on July 1 of each year and further, again depending on length of service, from one to fifteen days of severance pay in the event of dissolution or transfer of the business outside of the principal location of the business. All manufacturing operations ceased in January of 1988 after a determination that the debtor was in default under various terms of its loan agreement with its primary secured creditor. Thereafter, in an attempt to reactivate the business, the parties entered into a "Memorandum of Agreement" (herein-

after "Memorandum") which, inter alia, provided that the debtor would maintain operations in its current location for a minimum of two years and also called for a temporary reduction of the employees' hourly wage. The parties agreed that the Memorandum would not be effective until each representative of the Union and the debtor had signed the Memorandum. The debtor filed its Chapter 11 petition on February 2, 1988. The last signature was placed on the Memorandum on February 4, 1988. The debtor resumed its manufacturing activities and operated under the terms of the Memorandum for only a two week period and at all other times, the debtor and the Union operated under the Collective Bargaining Agreement until the debtor ceased operations on June 5, 1988. At no time during the course of the Chapter 11 proceeding did the debtor seek to reject or assume the Collective Bargaining Agreement and Memorandum pursuant to the terms of the Bankruptcy Code.

The Union maintains that the Memorandum is a Collective Bargaining Agreement and binding on the debtor. The Union, however, also maintains that this Memorandum modified the original Collective Bargaining Agreement which is also binding upon the debtor. The Union argues that the Bankruptcy Code requires the debtor to pay all of the accrued vacation and severance pay due under both the Collective Bargaining Agreement and the Memorandum as administrative expenses. Finally, the Union argues that pursuant to the Memorandum the debtor was to remain in business for a period of two years commencing on the date of the Memorandum and, therefore, the Union employees are entitled to damages for a breach of that contract for the amount of lost wages less interim earnings for a total in excess of $6,569,000.

The debtor counters these arguments by asserting that only that portion of the employee's vacation and severance pay earned between the date of the filing of the petition and the date of cessation of business should be accorded administrative expense status. Debtor urges that all the prepetition severance and vacation pay should be paid under the dictates of the Bankruptcy Code as either an unsecured prepetition debt or priority vacation and severance pay earned within 90 days prior to the bankruptcy filing.

## DISCUSSION

We will initially discuss the Union's claim under # 151 for lost earnings approximating $6,569,000. The Union argues that the Memorandum which was finalized by signature of a representative of the debtor on February 4, 1988 is a Collective Bargaining Agreement negotiated in good faith between an employer and the Union. Further, the debtor argues that the purpose of the Memorandum was to modify and extend the 1985–1988 Collective Bargaining Agreement. See Union's Memorandum at page 11. Union asserts that both the Memorandum and the 1985–1988 Collective Bargaining Agreement are binding on the debtor as collective bargaining agreements. The argument continues that it is settled under § 1113 of the United States Bankruptcy Code that collective bargaining agreements are binding on the debtor unless they are rejected. In support, the Union relies on *In re Unimet Corporation,* 842 F.2d 879 (6th Cir.), *cert denied,* 488 U.S. 828, 109 S.Ct. 81, 102 L.Ed.2d 57 (1988). The Union further claims that the debtor assumed the 1985–1988 Collective Bargaining Agreement and that negotiating and ratifying the new Memorandum did not require notice or hearing before the Court because it was part of the normal course of business. The Union then draws our attention to the Memorandum and in particular, Paragraph 2(a) which provides as follows:

"The employer will maintain operations covered by the current collective bargaining agreement in the Wilkes–Barre area for a minimum of two (2) years, commencing upon the effective date of this Memorandum of Agreement.

This commitment also includes the representation that equipment necessary to the operations of these facilities will not be moved from the Wilkes–Barre area."

The Union argues that the debtor was obligated to maintain operations in the Wilkes–Barre area for two years and because of the breach of this Memorandum the debtor owes the Union employees wages in excess of $6 Million from June of 1988 (date debtor ceased operations) through February 4, 1990 (two years from date of signing of Memorandum). We note that the Union does not claim that the debtor did not fully perform under the Collective Bargaining Agreement. The debtor proceeded postpetition under the terms of the Collective Bargaining Agreement for the entire period prior to closing except for a two week period in which employees were paid at a reduced hourly rate. The debtor, however, contests that the Memorandum is binding on the debtor and that, therefore, there is no breach of contract giving rise to the amount of damages claimed by the Union. In short, the debtor claims that the Memorandum was not a Collective Bargaining Agreement and was never assumed. Consequently, the only damages to be awarded postpetition are for the two week period when the employees were paid at a reduced hourly rate. Further, the debtor argues that both the Collective Bargaining Agreement and the Memorandum do not guarantee employment for the Union employees.

In one segment of the Union's argument they claim that the debtor has authority to enter into a Collective Bargaining Agreement in the ordinary course of business without notice and hearing. (Citations omitted). However, the Union also argues that it is well settled that Section 1113 of the Bankruptcy Code makes a Collective Bargaining Agreement binding on the debtor unless rejected and further that Section 1113 permits the debtor to reject or accept a Collective Bargaining Agreement only through a very specific procedure. See Union's Memorandum at pp. 13 and 14. The argument continues that because both Agreements were assumed payments due under these agreements are given administrative priority under § 503. The debtor concedes that the employees have a valid enforceable claim in the Chapter 11, but all payments should be made under the applicable provisions of the Bankruptcy Code and, in particular, §§ 503 and 507(a) which provide the scheme of treatment of pre-petition and postpetition claims including priority and administrative expenses.

 This is not the first court to be presented with this conflict and we direct the parties attention to the case of *In re Murray Industries, Inc.* at 110 B.R. 585 (Bankr.M.D.Fla.1990) which provides that § 1113 governs only the conditions under which a debtor-in-possession may modify or reject a collective bargaining agreement and that payment of employment related prepetition obligations is governed exclusively by § 507. We agree. We also see nothing inconsistent with the holdings of the *Unimet* case and the *Murray* case and this decision today. There was never any question that the debtor made an attempt to reject the Collective Bargaining Agreement. In fact, at all times other than a two week period after the filing of this bankruptcy, the debtor operated under the terms of the Collective Bargaining Agreement. What is of issue is the Union's Claim that the Memorandum signed by all parties and ratified shortly after the filing of the bankruptcy is a Collective Bargaining Agreement. This Memorandum, however, was not accepted or rejected under the terms of the United States Bankruptcy Code. Consequently, the Memorandum is not as the Union argues a valid post-petition Collective Bargaining Agreement. Further, the pre-petition Collective Bargaining Agreement was in effect post-petition, but this, in itself, does not lead to the Union's conclusion that all payments due under that Agreement automatically receive an administrative priority status in a liquidation such as the present.

 The next issue is to determine the proper measure of damages for a breach of the Collective Bargaining Agreement as claimed by the Union. The Union argues that it should be entitled to all wages which would be due the Union employees from June 1988 through February of 1990. The Union makes this claim arguing that the Collective Bargaining Agreement and the Memorandum guarantee future employment in the Wilkes–Barre area for two

years from the date of the signing of the Agreement. Presented with a similar issue was the court in the case of *In re Continental Airlines, Inc.*, 901 F.2d 1259 (5th Cir.1990) which wrote the following at p. 1264–65:

"Unless a collective bargaining agreement guarantees future employment, lost future wages and benefits as damages for its breach are not recoverable in periods when no work would have been available. *See, e.g., NLRB v. Biscayne Television Corp.*, 337 F.2d 267, 268 (5th Cir.1964); *Nabors v. NLRB*, 323 F.2d 686, 690 (5th Cir.1963) *cert. denied*, 376 U.S. 911, 84 S.Ct. 666, 11 L.Ed.2d 609 (1964); *NLRB v. Columbia Tribune Publishing Co.*, 495 F.2d 1384, 1393 (8th Cir.1974). (Footnote omitted). Likewise, employees working under such an agreement are not entitled to lost future wages if the employer ceases operations. *See, e.g., J.I. Case [Co. v. National Labor Relations Board*, 321 U.S. 332, 64 S.Ct. 576, 88 L.Ed. 762 (1944)] *supra; Fraser v. Magic Chef–Food Giant Markets, Inc.*, 324 F.2d 853 (6th Cir.1963); *Bakery & Confectionery Workers Intern. Union of America v. Great Atlantic & Pacific Tea Co.*, 357 F.Supp. 1322 (W.D.Pa.1973), *aff'd mem.*, 491 F.2d 748 (3d Cir.1974); *Abbington v. Dayton Malleable, Inc.*, 561 F.Supp. 1290 (S.D. Ohio 1983), *aff'd mem.*, 738 F.2d 438 (6th Cir.1984)."

As in the *In re Continental* case, this Collective Bargaining Agreement does not provide any guarantees of continued employment. The Union relies on the following language to prove that there was a guarantee of employment:

"(a) The Employer will maintain the operations covered by the current Collective Bargaining Agreement in the Wilkes–Barre area for a minimum of two (2) years, commencing upon the effective date of this Memorandum of Agreement. This commitment also includes the representation that equipment necessary to the operations of those facilities will not be moved from the Wilkes–Barre area.

(b) After the (2) two-year period referred to above, in the event that any of the operations in the Wilkes–Barre area are to be closed, the Union will be given (60) sixty days written notice by the Employer of the intention to close."

This language does not guarantee future employment. The record reflects that in early June of 1988 the debtor's primary secured creditor withdrew all funding making continued operation of the debtor's business impossible. Damages, if any, would only be available for the time that Roth American would have been able to continue in business. Accord, *In re Continental, supra*, at 1265. The employees received all their post-petition wages in full except for a two week period in which they were paid less than the amount called for in the Collective Bargaining Agreement. This is the only measure of damages available to the Union.

The next issue for determination is whether to consider the severance and vacation pay as administrative priorities or as an unsecured prepetition debt or priority debt under § 507.

We will first discuss the vacation pay issue. The Collective Bargaining Agreement provides that employees who had worked at least 550 hours during the previous year commencing July 1st through June 30th were entitled to one to four weeks of vacation pay depending upon their length of service. The facts reflect that just prior to July 1, 1989, the debtor ceased operations. The arguments remain consistent in that the Union claims that all vacation pay should be afforded an administrative priority and the debtor argues that only those employees that earned vacation pay post-bankruptcy should be afforded administrative priority. Likewise, those employees that earned their vacation time within the 90 days prior to the filing of the bankruptcy should be entitled to a priority under § 507(a)(3). Finally, those employees who earned all their vacation pay prior to the 90 days before bankruptcy have an unsecured claim. We look to the case of *In re Public Ledger*, 161 F.2d 762 (3rd Cir.1947) at page 769 where the Court wrote the following: "... vacation pay so

earned before the trustees took charge does not constitute wages as administrative expenses, because the service was not given during the reorganization period, and it follows logically that vacation pay earned under the trustees management does constitute administrative expense and is within the priority such status entitled it to enjoy." Accord, *In Amarex, Inc.*, 853 F.2d 1526 (10th Cir.1988); *Straus–Duparquet, Inc. v. Local No. 3*, 386 F.2d 649 (2nd Cir.1967); *In re Matter of Jartran, Inc.*, 732 F.2d 584, 587 (7th Cir.1984); *In re Matter of Unishops, Inc.*, 553 F.2d 305, 308 (2nd Cir.1977); *In re Mammoth Mart, Inc.*, 536 F.2d 950, 954 (1st Cir.1976).

The District Court in the case of *In re Crouthamel Potato Chip Company*, 52 B.R. 960 (E.D.Pa.1985); rev'd on other grounds, 786 F.2d 141 (3rd Circuit 1986), wrote the following at page 967 concerning the treatment of services rendered after the commencement of the case under § 503(b)(1) of the Bankruptcy Code:

> "But, wages and commissions for services rendered after the petition has been filed are identified by § 503(b)(1) as merely 'included' within the broader class of 'actual, necessary costs and expenses of preserving the estate.' Thus, once the conclusion is reached that a claim does not fall within the explicitly listed category of wages for services rendered after the commencement of the case, it is still necessary to consider whether the claim would fit within the broader class of actual and necessary costs of preserving the estate. To make that determination, the court must consider (1) whether the claim is for costs incurred post-petition which were necessary for the preservation of the estate or provided some benefit to the estate and (2) whether the claim results from a transaction or relationship between the debtor-in-possession and the creditor as distinguished from expenses resulting solely from pre-petition relationships between the debtor and the creditor."

This Court has concluded that the services rendered giving rise to vacation pay post-petition were necessary for the preservation and benefit of the estate. There-fore, to the extent that vacation pay was earned post-petition it will be given a first priority under § 503(b)(1). The Collective Bargaining Agreement was entered into between the debtor-in-possession and Union pre-petition and, therefore, most of the vacation pay, as well as the severance pay in question, results from a pre-petition relationship between the debtor and Union. We note that other than a bold assertion that because the Collective Bargaining Agreement is binding upon the debtor all vacation and severance pay should be treated as administrative priority, the Union has supplied no compelling reason or statutory or case law to support its position. On the other hand, the debtor urges that we follow the priority scheme as established by the Bankruptcy Code and, therefore, treat the vacation and severance pay as earned within the 90 days prior to the filing of the bankruptcy as a priority under § 507 and the vacation and severance earned outside of the 90 day period as an unsecured claim. We agree. See *In re Public Ledger, supra,; In re Jartran, supra; In re Mammoth Mart, Inc.* and *In re Murray, supra.* Following the scheme of distribution established by the Bankruptcy Code will create no injustice or inequity to the Union and all other pre-petition creditors because it is for their benefit that the debtor attempted to reorganize and if the reorganization was successful then presumably all the pre-petition creditors would have been better off.

■ The next issue for determination is how to treat the severance pay earned by the former employees. The Union once again relies on 11 U.S.C. § 1113 to support its argument that claims under an unrejected Collective Bargaining Agreement should be treated as an administrative priority over and above those priorities enumerated in 11 U.S.C. § 507. The 1985–1988 Collective Bargaining Agreement provides the following concerning severance pay.

> "Severance pay will be paid as follows: Any employee who receives five and one-half percent (5½%) bonus pay will be credited with one day's severance pay.

Any employee who receives seven per cent (7%) or more bonus pay will be credited with two (2) day's severance pay. Thereafter for every additional year of employment each employee will receive an additional one (1) day's severance credit.

Severance pay will be paid under the following conditions, not to exceed fifteen (15) days:

(a) Dissolution, bankruptcy, or insolvency of the business.

(b) Transfer, including consolidation, and/or merger of the business outside Luzerne County. In addition, employees shall have the right to follow the job within or without Luzerne County.

(c) Fire, flood subsidence or other casualty."

The Court in the *Matter of Health Maintenance Foundation* at 680 F.2d 619 (9th Cir.1982) discussed this issue and wrote the following at p. 621:

"There are two general types of severance pay: (1) pay at termination in lieu of notice; and, (2) pay at termination based on length of employment. The first type of severance pay appears to be entitled to priority payment as a cost of administration. *In re Public Ledger,* 161 F.2d 762, 771 (3d Cir.1947). The presumption is that the trustee chose to terminate the employee without notice as a part of administering the Chapter XI reorganization, and the severance pay in lieu of notice is therefore considered a cost of administration.

Three circuits have considered the second type of severance pay—that based on length of employment—which is at issue here. The First and Third Circuits hold that such severance pay is not entitled to priority as a cost of administration. *In re Mammoth Mart, Inc., supra,* 536 F.2d at 955; *In re Public Ledger,* 161 F.2d at 774. The Second Circuit holds that it is. *Straus–Duparquet, Inc. v. Local No. 3 Int. Bro. of Elec. Wkrs.,* 386 F.2d 649, 651 (2d Cir.1967)."

■ Severance pay is not entitled to priority status simply because the right to payment arises because of a debtor's post-petition action. See *In re Ohio Corrugating Company,* 115 B.R. 572 at 578 (Bankr. N.D.Ohio 1990).

Unlike the *In re Mammoth Mart, Inc.* and *Matter of Health Maintenance Foundation* cases, the employees did provide post-petition services on behalf of the debtor. We agree with the reasoning of the *In re Mammoth Mart, Inc.* case, *supra,* 536 F.2d at 954–955 which provides the following: "A creditor's right to payment will be afforded first priority only to the extent that the consideration supporting the claimant's right to payment was both supplied to and beneficial to the ... Trustee in the operation of the business." The language concerning severance pay in the Collective Bargaining Agreement provides for severance pay based upon length of employment. Therefore, the employees are not entitled to their entire severance pay as a cost of administration, but, rather, as either a prepetition priority earned within 90 days of the filing of bankruptcy or as a pre-petition unsecured debt. The employees will receive severance compensation in the amounts and classification (administrative priority, priority, unsecured) as provided for in debtor's Exhibit 1.

Finally, the debtor filed a Motion to Strike certain Declarations of Robert M. Baptiste, Patrick Szymanski and John Veneski or in the Alternative to Disqualify Baptiste & Wilder, P.C. as counsel for Teamsters Local Union 401. At the time of hearing on the Objections to the Claims referenced above, the debtor presented testimonial evidence concerning the circumstances surrounding the entering of the Memorandum between the parties. The Union presented no testimonial evidence concerning these matters. The Union referred to "declarations" of John Veneski, Patrick J. Szymanski and Robert M. Baptiste in its Memorandum in Support of Application for Allowance and Payment of Administrative Claims for Vacation Pay, Severance Pay and Contract Damages "out of an overabundance of caution and to dispel any possibility that the Court might draw an adverse inference from a failure to controvert ... double hearsay testimony."

See Union's Opposition Brief to Motion to Strike Declarations at page 4. While we find strong support in the debtor's objection that these declarations are hearsay and should be rejected for that reason, we have determined to allow these declarations into evidence, but, however, we have also determined that all evidence submitted by both the Union and the debtor concerning the circumstances surrounding the negotiation and entering into of the Memorandum to be of little probative value to resolution of the objections filed to the three claims in this matter. Therefore, it is further ordered that the Motion of the Debtor to Strike the Declaration of Robert M. Baptiste, Patrick Baptiste & Wilder, P.C. as counsel for Teamsters Local Union 401 is hereby denied.

Consequently, based upon the foregoing we find that only the severance and vacation pay earned by the employees post-petition will be granted an administrative priority position under § 507 of the United States Bankruptcy Code. All other pre-petition wages and severance pay will be accorded either a priority or unsecured status pursuant to the Bankruptcy Code and in particular § 503 and in such amounts as agreed to by the parties and submitted on debtor's Exhibit No. 1. Further, claim # 151 seeking a breach of contract claim in the approximate of $6,569,000 is denied in part and granted in part. This claim is granted only to the extent of the difference between the reduced hourly wages received for the two week period post-petition and the wages the employees were entitled to under the Collective Bargaining Agreement for that same period.

We make all the above pending findings of fact and conclusions of law pursuant to Bankruptcy Rule of Procedure 7052 and Federal Rule of Procedure 52.