**In re ARLENE'S SPORTSWEAR, INC., Debtor.**

**Bankruptcy No. 92–14409–JNG.**

United States Bankruptcy Court, D. Massachusetts, Eastern Division (Boston).

May 27, 1992.

Peter J. Antoszyk, Kaye, Fialkow, Richmond & Rothstein, Boston, Mass., for debtor.

John McMahon, Angoff, Goldman, Manning, Pyle, Wanger & Hiatt, P.C., Boston, Mass., for Union.

## DECISION

WILLIAM C. HILLMAN, Bankruptcy Judge.

Debtor is a clothing manufacturer. A number of Debtor's employees are covered by a collective bargaining agreement ("the Agreement") with the Cloak, Skirt and Dressmakers Union and the International Ladies' Garment Workers Union (collectively "the Union").

Debtor filed its voluntary petition under Chapter 11 on April 30, 1992, at which time it owed wages for the week ending May 1, 1992, which would have been paid May 8, 1992, had these proceedings not intervened. It also was obligated under the Agreement to make payments into a holiday trust fund ("the Fund") for the benefit of its union employees. Under the terms of the Agreement, the Union makes the payments to its

members and is reimbursed by the employer, Debtor.

The amounts involved were $20,663.80 in wages and $4,390.00 due to the Fund. It was represented that the wages to be paid to any one employee did not exceed the priority claim available to that employee under 11 U.S.C. § 507(a)(3).

An expedited hearing was requested and granted, and, on May 3, 1992, the Court authorized the payment of the wages, reserving the question of payment to the Fund for a hearing on May 26, 1992.

■ At that hearing, Debtor supported its motion as being filed out of an abundance of caution, as Debtor believes that payment of both the wages and the Fund's reimbursement to be mandated by 11 U.S.C. § 1113(f). Counsel for the Union supported that assertion and raised the related issue of the status of the payment as a prepetition or post-petition claim. However, based upon the assertion of Debtor that the sum was due to the Fund "as of the filing of the Chapter 11 petition," the Court finds that the Fund's claim is a prepetition claim. Even if it were not, the vacation time certainly accrued prior to the filing and

> it is now well established that the accrual of a claim for bankruptcy purposes must be determined with reference to bankruptcy law and not state law, and if the right to payment, which is an indispensable element of a claim under § 104(4)(A) of the Bankruptcy Code, matured and became vested prior to the commencement of a case, the fact that the time of payment is triggered by an event which occurred postpetition does not render such a claim a postpetition claim....

*Shipwrights, Joiners & Caulkers Local 2071 v. Uniflite, Inc. (In re Murray Inds., Inc.),* 110 B.R. 585 (Bankr.M.D.Fla.1990).

■ The motion raises an issue of first impression in this Court and Circuit, to wit: Does 11 U.S.C. § 1113(f) override all of the provisions of the Bankruptcy Code which would otherwise determine the priority of claims and the manner in which they are paid? Other courts have addressed the issue, with varying results.

## DISCUSSION

As a result of the Supreme Court's decision in *National Labor Relations Bd. v. Bildisco & Bildisco,* 465 U.S. 513, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984), Congress added § 1113 to the Bankruptcy Code. *Bankruptcy Amendments and Federal Judgeship Act of 1984,* P.L. 98–353, 98 Stat. 333, 390 (1984).

The new statute regulates the manner in which a debtor may deal with collective bargaining agreements. Two provisions in particular, §§ 1113(a) and 1113(f), are relevant:

> (a) The debtor in possession ... may assume or reject a collective bargaining agreement only in accordance with the provisions of this section.

> (f) No provisions of this title shall be construed to permit a trustee to unilaterally terminate or alter any provisions of a collective bargaining agreement prior to compliance with the provisions of this section.

The other provisions of the section establish the structure whereby the debtor may affect an existing collective bargaining agreement.

The Agreement would require Debtor to pay a prepetition debt, for the Court has found the Fund's claim to be such. It would share the same priority as the prepetition wages previously ordered paid, if it satisfies the time and amount requirements of 11 U.S.C. § 507(a)(3), but the Court does not have evidence on that issue. In any event, absent any effect of § 1113, payment of the prepetition claim would be subject to the automatic stay of 11 U.S.C. § 362.

The first decision on the issue appears to be *United Steelworkers v. Unimet Corp. (In re Unimet Corp.),* 842 F.2d 879 (6th Cir.1988), *cert. denied,* 488 U.S. 828, 109 S.Ct. 81, 102 L.Ed.2d 57 (1989). The ultimate conclusion of the circuit court was that

> Congress intended to give broad protection to collectively bargained for rights which are threatened by a corporate re-

organization under Chapter 11 of the Bankruptcy Code. Our conclusion that 11 U.S.C. § 1113 applies to all provisions of a collective bargaining agreement does no violence to the plain language of the statute or the legislative history as we perceive it.

*Id.* at 885.

The sixth circuit held that the debtor was required to pay prepetition accruing retiree benefits until it had prevailed in an action to reject those benefits under 11 U.S.C. § 1113(c). *Accord, In re Canton Castings, Inc.,* 103 B.R. 874 (Bankr.N.D.Ohio 1989) (accrued vacation pay).

The second circuit examined § 1113 in another context in *Shugrue v. Air Line Pilots Ass'n (In re Ionosphere Clubs, Inc.),* 922 F.2d 984 (2d Cir.1990), *cert. denied,* —— U.S. ——, 112 S.Ct. 50, 116 L.Ed.2d 28 (1991). It held that § 1113.

was meant to prohibit the application of any other provision of the Bankruptcy Code when such application would permit a debtor to achieve a unilateral termination or modification of a collective bargaining agreement without meeting the requirements of § 1113.

922 F.2d at 990.

Judge Schwartzberg correctly points out that the *Shugrue* position results in a situation where

claims arising out of a collective bargaining agreement may be granted priority status regardless of whether they meet the requirements of 11 U.S.C. §§ 503(b) and 507(a). Thus, 11 U.S.C. § 1113(f) creates a super-priority for all pre-petition as well as post-petition payments due under a collective bargaining agreement which, in effect trumps 11 U.S.C. § 507.

*In re Golden Distributors, Ltd,* 134 B.R. 760 (Bankr.S.D.N.Y.1991). *Contra, In re Roth American, Inc.,* 120 B.R. 356 (Bankr. M.D.Pa.1990).

In a sense, this view parallels the treatment of continuing contracts not involving labor relations which this Court adopted in *Bob Brest Buick, Inc. v. Nissan Motor Corporation (In re Bob Brest Buick, Inc.),* 136 B.R. 322 (Bankr.D.Mass.1991).

To the contrary is *Shipwrights, Joiners & Caulkers Local 2071 v. Uniflite, Inc. (In re Murray Inds., Inc.), supra.* Chief Judge Paskay found a direct conflict between § 1113(f) and the priority provisions of §§ 507 and 1129(9)(B). To reconcile the problem, he looked to 11 U.S.C. § 1114, which deals with retiree benefits.

First, §§ 1113 and 1114 are similar in their operation in that both establish procedures to allow a debtor-in-possession to alter certain contractual obligations. Secondly, retirement benefits, like prepetition vacation benefits, are not executory in nature but represent benefits to be paid from the bankruptcy estate for services rendered prior to the filing of the bankruptcy petition.

In § 1114 … there is explicit language exempting payment of retirements benefits from other provisions of Title 11 which otherwise might prohibit such payments. The Section also affirmatively mandates the payment of these benefits. The explicit language and the legislative history of § 1114 stand in stark contrast to the absence of any such language in § 1113, which would have created an exemption for immediate payment of any wages or benefits due under a collective bargaining agreement, is evidence that Congress did not intend § 1113 to be exempt from the operation of other sections of the Code, including the priorities set forth in § 507(a).

*Id.* at 587.

He concluded that

the better view is one which reconciles § 507 with § 1113 and that § 1113 governs only the conditions under which a Debtor–in–Possession may modify or reject a collective bargaining agreement, but that payment of employment-related prepetition obligations is governed exclusively by § 507. Even accepting, without conceding, that the failure to pay the vacation pay benefits at this time, in fact, modifies or alters the terms of the Agreement in order to preserve the rehabilitative aims of Chapter 11, then § 507 must prevail.

*Id.* at 588. *Accord, In re Armstrong Store Fixtures Corp.,* 135 B.R. 18, *reh'g. denied* 139 B.R. 347 (Bankr.W.D.Pa.1992).

The Court believes that the better view is that adopted by the sixth and second circuits. While this approach does dilute the power of the automatic stay in the area of collective bargaining agreements, and may at times lead to odd results, Congress certainly intended to do something when it adopted § 1113. The *Shipwrights* and *Armstrong* position virtually deletes § 1113 from the Bankruptcy Code.

Debtor's motion to make the requested payments to the holiday trust fund is granted.