EAGLE, INC.

v.

LOCAL NO. 537 OF the UNITED ASSOCI-
ATION OF JOURNEYMEN AND AP-
PRENTICES OF the PLUMBING AND
PIPE FITTING INDUSTRY OF the
UNITED STATES AND CANADA, AFL–
CIO.

Civil Action No. 95–CV–10693–RGS.

United States District Court,
D. Massachusetts.

Feb. 15, 1996.

Tali A. Tomsic, Rosenberg & Kitaeff, And-
over, MA, for Plaintiff.

Michael Joyce and Kimberly McCarthy,
Murphy, Hesse, Toomey & Lehane, Quincy,
MA, for Defendant.

## MEMORANDUM AND ORDER FROM AN APPEAL OF AN ORDER OF THE UNITED STATES BANKRUPTCY COURT

STEARNS, District Judge.

The appellant, Local No. 537 of the United
Association of Journeymen and Apprentices
of the Plumbing and Pipe Fitting Industry of
the United States and Canada. AFL–CIO
(the Union), brought this appeal from an
order of the Bankruptcy Court dated Febru-
ary 8, 1995. The disputed order mooted a
motion filed by the debtor/appellee, Eagle,
Inc., seeking to reject Eagle's collective bar-
gaining agreement with the Union.

Eagle repairs and sells heating, ventilation,
and air conditioning equipment. On Septem-
ber 1, 1991, Eagle entered a collective bar-
gaining agreement with the Union that re-
quired Eagle to contribute benefits to the
Union's health and welfare fund and an annu-
ity pension fund (the Funds). The agree-
ment was to expire on September 1, 1993.

Eagle stopped paying benefits to the
Funds in late 1992. On March 26, 1993.
Eagle filed a Chapter 11 bankruptcy petition.
On April 29, 1993, Eagle notified the Union
that it was terminating the collective bar-
gaining agreement effective September 1,
1993.

On March 31, 1994, the Union filed a Proof
of Claim in the Bankruptcy Court seeking

super-priority status under 11 U.S.C. § 1113(f) *for the amount due the Funds.*[1] Eagle objected to the claim and on December 13, 1994, a hearing was held before Chief Judge Kenner who directed Eagle to file a motion to reject the bargaining agreement pursuant to the appropriate provisions of 11 U.S.C. § 1113.[2] A hearing on Eagle's motion was held on February 8, 1995. At the hearing, Judge Kenner mooted Eagle's motion. The Court reasoned that because the agreement had expired by its own terms on September 1, 1993, there was no longer any need to comply with the provisions of 11 U.S.C. § 1113.

The Union appealed. It argued: (1) that the agreement could not be terminated post-petition without first satisfying the procedural requirements of 11 U.S.C. § 1113; (2) that even if the agreement terminated of its own accord on September 1, 1993, Eagle was bound by the terms of the agreement post-petition until it was formally rejected; and (3) that the Union's Proof of Claim should therefore receive super-priority status for that period.

This court heard the Union's appeal on December 6, 1995. Shortly after oral argument, the parties informed the court that the Internal Revenue Service had filed a motion in the Bankruptcy Court seeking to convert Eagle's Chapter 11 reorganization petition to a Chapter 7 liquidation. Because an allowance of the IRS motion threatened to render the Union's appeal futile for all practical purposes, the court agreed to stay determination of the appeal for thirty days. On January 12, 1996, Eagle filed an affidavit stating that its bankruptcy petition had in fact been converted to a Chapter 7 liquidation. In response, the Union informed the court that it would waive all issues on appeal save one: whether the debts owed by Eagle to the Funds should receive super-priority status prior to the bargaining agreement's September 1, 1993 termination date.[3]

■ Given the limited nature of this appeal, the court will accept as final the Bankruptcy Court's determination that the collective bargaining agreement was in effect until it expired on September 1, 1993. The question that remains is whether 11 U.S.C. § 507, which establishes the priority assigned to claims and administrative expenses, takes precedence to the requirements of section 1113(f), thus permitting Eagle to unilaterally alter the agreement prior to September 1, 1993.

■ The answer is no. Section 1113(f) mandates that "[n]o provision of this title shall be construed to permit a trustee to unilaterally terminate or alter any provisions

1. Section 1113(f) provides that "[n]o provision of this title shall be construed to permit a trustee to unilaterally terminate or alter any provisions of a collective bargaining agreement prior to compliance with the provisions of this section." Section (b) sets out a statutory scheme by which a party may formally reject a collective bargaining agreement.

2. Section 1113 provides in pertinent part:

(a) The debtor ... or the trustee ... may assume or reject a collective bargaining agreement only in accordance with the provisions of this section. (b)(1) Subsequent to filing a petition and prior to filing an application seeking rejection of a collective bargaining agreement, the debtor in possession or trustee ... shall—
(A) make a proposal to the authorized representative of the employees covered by such agreement, based on the most complete and reliable information ... which provides for those necessary modifications in the employees benefits and protections that are necessary to permit the reorganization ...; and
(B) provide, subject to subsection (d)(3), the representative of the employees with such relevant information as is necessary to evaluate the proposal.
(2) During the period beginning on the date of the making of a proposal provided for in paragraph (1) and ending on the date of the hearing provided for in subsection (d)(1), the trustee shall meet, at reasonable times, with the authorized representative to confer in good faith in attempting to reach mutually satisfactory modifications of such agreement.
(c) The court shall approve an application for rejection of a collective bargaining agreement only if the court finds that—
(1) the trustee has, prior to the hearing, made a proposal that fulfills the requirements of subsection (b)(1);
(2) the authorized representative of the employees has refused to accept such proposal without good cause; and
(3) the balance of the equities clearly favors rejection of such agreement....

3. See letter of attorney Kimberly McCarthy dated December 28, 1995.

of a collective bargaining agreement prior to compliance with the provisions of this section." Section 1113 was intended by Congress to overrule the Supreme Court's holding in *N.L.R.B. v. Bildisco & Bildisco,* 465 U.S. 513, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984), that a collective bargaining agreement is unenforceable post-petition until either assumed or rejected by the debtor or trustee. See *In re Unimet Corp.,* 842 F.2d 879, 881–882 (6th Cir.1988).

The Massachusetts Bankruptcy Court has interpreted section 1113(f) to mean that "claims arising out of a collective bargaining agreement may be granted priority status regardless of whether they meet the requirements of 11 U.S.C. §§ 503(b)[4] and 507(a). Thus, [section] 1113(f) creates a super-priority for all pre-petition as well as post-petition payments due under a collective bargaining agreement which, in effect, trumps 11 U.S.C. § 507." *In re Arlene's Sportswear, Inc.,* 140 B.R. 25, 26 (Bankr.D.Mass.1992), quoting *In re Golden Distributors, Ltd.,* 134 B.R. 760, 765 (Bankr.S.D.N.Y.1991).[5] See also *United Steelworkers of America v. Ohio Corrugating Co.,* 1991 WL 213850 (N.D.Ohio, March 15, 1991). Cf. *In re Ionosphere Clubs, Inc.,* 922 F.2d 984, 993 (2d Cir.1990). But see *In re Roth Am., Inc.,* 975 F.2d 949, 954–958 (3d Cir.1992), and *In re Murray Industries, Inc.,* 110 B.R. 585, 587 (Bankr.M.D.Fla.1990).

Eagle does not dispute that in terminating the bargaining agreement with the Union it did not follow the procedures set out in section 1113. Nor does Eagle dispute that its debt to the Union arises from obligations under the agreement in effect both pre-petition and post-petition prior to September 1, 1993. If these debts are deemed subject to the priority requirements of section 507, Eagle will have succeeded in altering the bargaining agreement without complying with the mandate of section 1113(f), in contravention of Congress's intent in enacting the stat-

ute. As such, the Bankruptcy Court's February 8, 1995 Order mooting Eagle's motion will be vacated to the extent that it implicitly denied the Union the super-priority status for its claim, a status to which it was entitled as a matter of law.[6]

### ORDER

For the foregoing reasons, it is *ADJUDGED* and *DECLARED* that the Union's claim against Eagle for debts accruing and owed to its Funds prior to September 1, 1993, has super-priority status with all rights attendant thereto.

SO ORDERED.

---

**4.** Section 503 establishes the procedure for filing a claim for an administrative expense.

**5.** *Arlene's* is a case based largely upon a survey and assessment of then relevant authority.

**6.** The court recognizes that the appeal is in a somewhat awkward procedural posture. It would have been better had the Union brought its own motion to confirm super-priority status for its claim rather than relying on its opposition to Eagle's motion to reject the agreement. At this late date in the litigation, however, the interests of all parties are better served by a decision on the merits.