In re **ARMSTRONG STORE FIXTURES CORPORATION, Debtor.**

In re **CUSTOM CONCEPTS, INC., Debtor.**

In re **BENTLEY INDUSTRIES, INC., Debtor.**

**Bankruptcy Nos. 91–2942–BM, 91–4235–BM and 91–4264–BM. Motion No. 91–7779M.**

United States Bankruptcy Court, W.D. Pennsylvania.

Jan. 2, 1992.

Joel M. Helmrich, Tucker Arensberg, P.C., Pittsburgh, Pa., for debtors.

Robin Alexander, United Elec., Radio and Machine Workers of America, Pittsburgh, Pa., for UE Locals 650 and 651.

Claudia Davidson, Healey Whitehill, Pittsburgh, Pa., for IUE Local 643.

Edward A. Olds, Pittsburgh, Pa., for movants.

Stuart S. Mermelstein, Kirkpatrick & Lockhart, Pittsburgh, Pa., for petitioning creditors.

Donald F. Baty, Jr., Honigman, Miller, Schwartz & Cohn, Detroit, Mich., for NBD Bank, N.A.

Peter N. Pross, Kincaid, McGrath & O'Keefe, P.C., Pittsburgh, Pa., for Integra Nat. Bank/Pittsburgh.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Before the Court is a *Motion To Pay Claims Pursuant To 1113(f)* brought by Locals 650 and 651 of the United Electrical, Radio and Machine Workers of America and by Local 643 of the International Union

of Electronic, Electrical, Technical Salaried and Machine and Furniture Workers (hereinafter "movants").

Movants maintain that the above debtors have failed to pay wages and other benefits to their employees as provided for in the collective bargaining agreements ("agreements") executed by movants and debtors. Said failure, movants contend, constitutes unilateral alteration of the agreements and contravenes 11 U.S.C. § 1113(f). According to movants, employee claims resulting from debtors' violations of § 1113(f) are entitled to "super-priority" status without regard to whether they qualify as priority claims pursuant to 11 U.S.C. § 507(a). Movants seek to have employee claims paid in full immediately from whatever funds are presently available. As the only available funds are fully encumbered the movants, of necessity, aver they prime the secured creditor.

Debtors admit that they have failed to pay wages and benefits due under the agreements but deny that said failure constitutes a unilateral alteration of the agreements in violation of 11 U.S.C. § 1113(f). Debtors aver they merely "breached" the collective bargaining agreement. In addition, debtors deny that claims arising from a violation of § 1113(f) are entitled to super-priority status and deny that § 1113(f) supersedes § 507(a) of the Bankruptcy Code. Any priority to be accorded employee claims, debtors argue, is subject to the requirements of § 507(a).

NBD, a first priority secured creditor with a lien on substantially all of debtors' personal property, takes no position as to whether movants' claims should be treated as administrative claims pursuant to § 507(a). It does, however, oppose the motion to the extent that movants seek a determination that employee claims have priority over their interest. NBD denies that § 1113(f) supersedes § 507(a) and argues that § 1113(f) does not accord employee claims arising from a violation of § 1113(f) super-priority status ahead of the claim of a first priority secured creditor.

Movants' motion will be denied for reasons set forth below. Although debtors' breach may be the ultimate violation of § 1113(f), employee claims arising therefrom are not entitled to priority without regard to whether those claims qualify as priority claims pursuant to § 507(a). Debtors will not be required at this time to satisfy the claims in full from whatever funds are available.

–I–

FACTS

Local 643 is a party to a collective bargaining agreement with debtor Bentley Industries, Inc. The agreement will expire on January 31, 1992.

Local 650 is a party to a collective bargaining agreement with debtor Custom Concepts, Inc. The agreement will expire on October 14, 1992.

Local 651 is a party to a collective bargaining agreement with debtor Armstrong Store Fixtures Incorporated. The agreement will expire on January 31, 1992.

Debtors have failed to pay wages, vacation and severance pay, health insurance premiums and have failed to remit union dues, as provided for in the respective agreements. At no time since the filing of the bankruptcy petitions have debtors made application to the court to terminate or to alter the provisions of these agreements pursuant to 11 U.S.C. § 1113.

Movants have filed proofs of claim on behalf of their members who are employed by debtors. Some of the claims arose prior to the filing of the bankruptcy petitions.

On December 4, 1991, Orders were entered approving the sale free and clear of all liens and encumbrances of some of debtors' personal property. All of the property sold at that time had been subject to the lien and security interest of NBD prior to the sale. The proceeds realized from those sales are not sufficient to satisfy the interest of NBD as well as the claims filed by movants on behalf of their members.

–II–

ANALYSIS

11 U.S.C. § 1113(f) provides as follows:

No provision of this title shall be construed to permit a trustee to unilaterally terminate or alter any provisions of a collective bargaining agreement prior to compliance with the provisions of this section.

■ Debtors concede that they have failed to pay wages and various benefits due and owing to their employees under the various agreements and concede that they have not petitioned the court for permission to terminate or alter the agreements pursuant to § 1113. They deny, however, that failure to make the required payments was in violation of § 1113(f). Debtors claim that failure to pay wages and benefits as required constituted a mere breach of the agreements, rather than a unilateral alteration thereof.

This contention is without merit. The distinction between a breach and a unilateral alteration, upon which debtors insist, is of no significance in this instance. Debtors effected a unilateral alteration of the agreements, for purposes of § 1113(f), when they failed to abide by the provisions pertaining to payment of wages and benefits.

■ The agreements remain in effect unless and until debtors comply with the provisions set forth in § 1113 for terminating or modifying them. *See In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 990 (2d Cir.1990), cert. denied sub nom. *Air Line Pilots Ass'n v. Shugrue*, — U.S. —, 112 S.Ct. 50, 116 L.Ed.2d 28 (1991). As a consequence, debtors remain obligated to pay wages and benefits set forth in the agreements as they become due.

The nettlesome issue raised by the Motion and the objections thereto concerns the status to be accorded to claims which arise as a result of debtors' violations of § 1113(f). The status of employee wage claims commonly is determined pursuant to § 507(a).

According to movants, claims arising from a violation of § 1113(f) are to be treated "differently" and are to be accorded the "highest priority". Movants maintain that § 1113(f), by its express terms, supersedes other Code provisions and necessitates that employee claims arising as a result of a violation of § 1113(f) are not to be ranked according to § 507(a).

It is not altogether clear what movants are claiming when they assert that such claims are to be treated "differently" and enjoy the "highest priority". At times movants appear to be arguing that claims arising from a violation of § 1113(f) are to be accorded administrative priority, regardless of whether they satisfy the requirements of § 507(a)(1). At still other times movants appear to be arguing that such claims enjoy a priority above and beyond that enjoyed by administrative claims and that they take priority even over first priority secured claims. Employee claims, they appear to be arguing, are to be paid in full from whatever funds are available, whether or not those funds already are encumbered.

■ It is not necessary to determine which of these positions movants are asserting in order for their motion to be resolved. Both interpretations rely upon the premiss that § 1113(f), by its terms, supersedes and thereby renders inoperative other Code provisions for determining the priority to be accorded to claims arising out of a violation of § 1113(f). As shall be seen, this premiss is incorrect.

Analysis of the scope and effect to be given to § 1113(f) must begin with the circumstances leading to its enactment.

The Supreme Court had held in *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984), that the filing of a bankruptcy petition rendered unenforceable a collective bargaining agreement to which a debtor was a party. *Id.* at 532, 104 S.Ct. at 1199. As a consequence, a debtor could unilaterally terminate it or alter its provisions prior to seeking court approval for rejection of an executory contract pursuant to 11 U.S.C. § 365(a). *Id.* at 533–34, 104 S.Ct. at 1199.

In response to the *Bildisco* firestorm, Congress promptly enacted § 1113 so as to provide a detailed and time-specific procedure whereby debtors "may assume or reject a collective bargaining agreement

...". Subsection 1113(f) provides that "no provision of this title shall be construed to permit a trustee to unilaterally terminate or alter any provisions of a collective bargaining agreement prior to compliance with the provisions of this section.

Movants' contention that the broad language of § 1113(f) ("no provision of this title shall be construed") supersedes and renders inoperative other Code provisions (§ 507(a) in particular) when determining the status to be accorded to employee claims arising from a violation of § 1113(f) is without merit. Subsection 1113(f) is "circumstance specific" rather than "section specific". That is to say, Congress did not identify specific Code provisions whose application was rendered inoperative by § 1113(f). Whether another Code provision is rendered inoperative by § 1113(f) depends on whether its application in a particular situation would defeat the purpose of § 1113(f). *See In re Ionosphere Clubs, Inc.*, 922 F.2d at 991.

There is no indication in the legislative history as to whether Congress intended that § 1113(f) supersede § 507(a) and render it inoperative when determining the priority of employee claims resulting from a violation of § 1113(f). Analysis therefore must begin with some elementary principles of statutory construction. "[W]hen two statutes are capable of co-existence, it is the duty of the courts ... to regard each as effective." *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 155, 96 S.Ct. 1989, 1993–94, 48 L.Ed.2d 540 (1976) (citation omitted). Consistent application of different statutory provisions, wherever possible, is encouraged in order to avoid the implied repeal of the earlier enactment. *See Matter of Lawaetz*, 728 F.2d 225, 229 (3rd Cir.1984). If two statutes are irreconcilable, the more recently enacted must be given effect because it is the more recent indication of legislative intent. *See Radzanower*, 426 U.S. at 154, 96 S.Ct. at 1993.

Application of these canons of construction to § 1113(f) and to § 507(a) compels the conclusion that the former does not render the latter inoperative in determining the priority of employee claims arising from a violation of the former. The two provisions can be harmonized.

Subsection 507(a) categorizes the claims that are to receive distribution and ranks them ordinally. Subsection 1113(f) is intended to prohibit the application of other Code provisions to the extent that their application would enable a debtor to effect unilateral termination or modification of a collective bargaining agreement without meeting the requirements of the other subsections of § 1113. *See In re Ionosphere Clubs, Inc.*, 922 F.2d at 990–91. To the extent that another Code provision does not enable a debtor to do so, it is not rendered inoperative by § 1113(f).

Application of § 507(a) would not facilitate unilateral termination or alteration by debtors of the agreements. To the contrary, § 507(a) comes into play only after a violation of § 1113(f) has occurred. Once unilateral termination or alteration has taken place, it becomes necessary to categorize and rank for distribution purposes employee claims arising from the violation.

It follows from all of this that § 1113(f) does not supersede and render § 507(a) inoperative when determining the priority to be accorded to employee claims arising from a violation of § 1113(f). If a claim is to be treated as an administrative claim, for instance, it must qualify as such pursuant to § 507(a)(1). Those cases which have held that claims arising from a violation of § 1113(f) do not have to qualify under § 507(a)(1) in order to be accorded administrative priority—e.g., *In re Unimet Corp.*, 842 F.2d 879, 884 (6th Cir.1988) and its progeny—erroneously ascribe too great a scope and effect to § 1113(f). To the extent that these cases fail to carefully circumscribe the scope of § 1113(f) in rendering other Code provisions inoperative, we decline to follow them.

In addition, overriding policy reasons cutting to the essence of bankruptcy philosophy militate against granting the moving parties' prayer for relief. The bankruptcy filing grants a debtor a breathing spell and generally assures that creditors having similar status will be treated similarly. In the case at hand, we have at least two

---

types of employees—i.e., employees covered by a collective bargaining agreement and employees covered by contract. Were we to accept the moving parties' theory, individuals providing a similar service to these debtors would be treated in dissimilar fashion. One group of unsecured creditors would receive very favorable treatment and probably would be paid one hundred percent (100%) of their claims, whereas the other group of unsecured creditors would likely be paid nothing. Congress obviously did not intend such a result. Had Congress so intended, it would have said so in unequivocal terms.

As has been noted, movants at times appear to suggest that their claims also take priority over NBD's first priority secured claim, and that their claims are to be paid ahead of NBD out of the proceeds realized from the sales of the property in which NBD has a first priority security interest.

Movants have provided no authority in support of this proposition. They have cited to no Code provisions or case law. Instead, movants appear to rely on the same premiss upon which they relied in support of their other contention. Specifically, movants appear to be arguing that § 1113(f), on its own terms, mandates that employee claims arising from a violation of § 1113(f) take precedence over all other claims, including those of holders of first priority secured interests in estate property.

It is not necessary at this time for the court to divine the rationale for movants' contention. The proposition is patently untenable. As has been demonstrated, the priority accorded to employee claims arising from a violation of § 1113(f) are to be determined pursuant to § 507(a). The highest status which can be accorded to such claims is as administrative claims. Neither § 507(a) nor any Code provision accords such claims a priority greater than that enjoyed by a first priority secured claimant.

The Motion To Pay Claims Pursuant To 1113(f) must be denied at this time because movants have failed to demonstrate that their claims are "different" from other claims against debtors and are to be accorded the "highest priority". A caveat is, however, in order at this time. No determination has yet been made as to whether all or a portion of movants' claims are entitled to priority under § 507(a)(1) and/or (3). Neither this question nor a factual basis therefor was placed before the court. This matter will be resolved in accordance with the principles set forth in *In re Public Ledger*, 161 F.2d 762 (3rd Cir.1947), if and when it is properly placed in issue, with supporting data, by interested parties.

As appropriate Order shall be issued.