**In re JONES TRUCK LINES, INC.,
an Arkansas Corporation,
Debtor–in–Possession.**

**JONES TRUCK LINES, INC., Plaintiff,**

v.

**CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND; Central States, Southeast and Southwest Areas Health and Welfare Fund; Corestates Bank, N.A. as Lender and as Agent for Midlantic National Bank, Continental Bank, and Wilmington Trust Company, Defendants.**

Bankruptcy No. 91–15475M.
Adv. No. 92–8527.

United States Bankruptcy Court,
W.D. Arkansas,
Fayetteville Division.

Jan. 12, 1994.

Isaac A. Scott, Jr., Charles T. Coleman, Kimberly Wood Tucker, Wright, Lindsey & Jennings, Little Rock, AR, for debtor-in-possession.

Thomas C. Nyhan, James P. Condon, Rosemont, IL, G.W. Turner III, Andrew R. Turner, Conners & Winters, Tulsa, OK, Melva Harmon, Little Rock, AR, for Cent. States Funds.

Thomas P. Thrash, John T. Hardin, Stephen E. Snider, Rose Law Firm, P.A., Little Rock, AR, for Corestates Bank.

Audrey R. Evans, Lax, Vaughan, Pender & Evans, Little Rock, AR, Steven N. Cousins, Armstrong Law Firm, St. Louis, MO, for Unsecured Creditors' Committee.

## ORDER

JAMES G. MIXON, Chief Judge.

On April 30, 1993, Jones Truck Lines, Inc., (the Debtor), filed a complaint to recover alleged preferential transfers from Central States, Southeast and Southwest Areas Pension Fund; Central States, Southeast and Southwest Areas Health and Welfare Fund (collectively Central States). The complaint also contains a count objecting to the secured status of the claims of Central States. The complaint alleges that payments within 90 days of the petition date totaling $5,743,-491.09 constitute preferential transfers pursuant to 11 U.S.C. § 547 (1988). The complaint also alleges that within 90 days of the petition date, the Debtor executed promissory notes payable to Central States in the sum of $1,427,040.68 "for unpaid and accrued pension contributions" and in the sum of $1,458,-724.80 "for unpaid and accrued health and welfare contribution[s]." The complaint alleges further that in order to secure the obligations evidenced by the notes, a subordinated participation agreement was executed between the Debtor and its principal lender Corestates Bank (the Bank), creating a second lien in certain property owned by the Debtor. The complaint seeks to set aside the second lien created by the subordinated participation agreement as a preference under 11 U.S.C. § 547 (1988). Central States filed an answer to the complaint denying that any of the alleged transfers were preferential and asserting the validity of their claims.

On July 23, 1993, the Debtor filed a motion for partial summary judgment asserting that the facts concerning the transfer of the security interest and the status of Central States' secured claims are not in genuine dispute and that the Debtor is entitled to judgment as a matter of law.

Central States filed a response denying the Debtor's motion for summary judgment and also filed a cross motion for summary judgment on all issues raised by the complaint. A hearing on the motions for summary judg-

ment was conducted on October 6, 1993, and the matters were taken under advisement.

The proceeding before the Court is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(F) (1988), and the Court has jurisdiction to enter a final judgment in the case.

## FACTS

On July 9, 1991, the Debtor filed a voluntary petition for relief under the provisions of chapter 11 of the United States Bankruptcy Code. The Debtor ceased all operations as of the petition date and has been liquidating itself, although no liquidating plan has been confirmed.

Central States are employee benefit plans and trusts. They are primarily funded by contributions from participating employers under negotiated collective bargaining agreements. Prior to the filing of the bankruptcy petition, the Debtor had executed a collective bargaining agreement with local union affiliates of the International Brotherhood of Teamsters (the Union). The collective bargaining agreement required the Debtor to make contributions to Central States for pension and health and welfare benefits for its union employees. The Debtor terminated the employment of its union employees when it ceased operations on the date the bankruptcy petition was filed.

The obligation to make contributions to Central States for pension benefits accrued on a daily basis and the obligation to make health and welfare benefits accrued on a weekly basis. The Debtor failed to make the required contributions to Central States for the months of December 1990 and January 1991 creating an arrearage to Central States of approximately $2.8 million.

In 1988, the Debtor, the Bank and Central States had executed a Loan and Security Agreement purporting to grant to Central States a subordinated lien in the Debtor's assets. In May 1991, this Loan and Security Agreement was modified by a Participation Agreement, which provides in relevant part as follows:

C. Borrower owes substantial sums to the Funds as unpaid and accrued pension and health and welfare contributions under several collective bargaining agreements between Borrower and certain local unions affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America. As of February 15, 1991, Borrower owed (i) $1,427,040.68 to the Pension Fund for unpaid and accrued pension contributions and (ii) $1,458,724.80 to the Welfare Fund for unpaid and accrued health and welfare contributions. Borrower has agreed to execute and deliver promissory notes (one to each Fund) to evidence the two above-mentioned delinquent contribution accounts (the "Fund Notes"). In addition, Borrower has agreed to pay, on a current basis, weekly contributions to the Funds in such amounts (which currently approximate $425,000) so that as of the 15th day of each month Borrower will have fully paid to the Funds Borrower's contributions under the above-mentioned collective bargaining agreements for the preceding month. Borrower also has agreed that the Fund Notes and above-mentioned contribution obligations will be secured by a security interest in the "blanket" lien on substantially all of Borrower's assets but that such security interest and lien will be subordinate to the security interest and lien of Lenders.

. . . .

1. *Certain Payments.* Concurrently with the execution and delivery of this Agreement, (a) Borrower has executed and delivered (i) to the Pension Fund a Fund Note dated as of the date hereof in the principal amount of $1,427,040.68 for unpaid and accrued pension contributions payable by Borrower as of February 15, 1991 and (ii) to the Welfare Fund a Fund Note dated as of the date hereof in the principal amount of $1,458,724.80 for unpaid and accrued health and welfare contributions payable by Borrower as of February 15, 1991; (b) Borrower's Indebtedness under the Loan has been increased by $2,885,765.48 as if such amount has been advanced as of the date hereof by Lenders, in accordance with their respective Pro Rata Share, to Borrower under the Loan for all purposes of the Loan Documents, with interest accruing on the above-provided increase in Indebtedness from the date

hereof, at the same rate(s) of interest that accrue hereafter on the Secured Term Loan; and (c) the Funds have assigned their rights hereunder to Borrower as provided in the Assignment Agreement attached hereto as Exhibit A. The Pro Rata Share of each Lender in the Indebtedness shall not be affected by the increase in Indebtedness pursuant to this Section 1 and the Funds shall own 100% of the rights with respect to such increase in the Indebtedness.

2. *Funds' Participation Rights.*

(a) Subject to the terms and conditions hereof, Lenders, in accordance with their respective Pro Rata Share, hereby assign, transfer, convey and set over to the Funds all of their right, title and interest in and to (i) $2,885,765.48 of principal amount of the Loan, including allocable interest thereon and related penalties, if any, from Borrower as provided in the Loan Documents, including the right thereunder to be paid, ask, demand, sue for, take or receive such payments from Borrower (the "Funds Payments"),....

. . . .

(c) The Funds shall be the owners of the Funds' Participation Rights. This Agreement constitutes a sale of the Funds' Participation Rights and shall in no way be construed as a loan by the Funds to Lenders or as creating any other relationship.

The collective bargaining agreement between the Debtor and the Union has never been rejected under the procedure required by 11 U.S.C. § 1113 (1988).

### Debtor's Motion for Partial Summary Judgment

■ On July 23, 1993, the Debtor filed a motion for partial summary judgment. The Debtor asserts that no genuine issue of material fact exists and that the second lien granted by the Debtor to secure the arrearage due under the collective bargaining agreement may be avoided under the provisions of 11 U.S.C. § 547 (1988) as a matter of law.

In response to the motion for partial summary judgment Central States assert, among other defenses, that the Debtor was not insolvent at the time the Debtor alleges that the transfer was made. In support of this assertion, Central States assert that an undated financial statement for the year ended March 30, 1991, submitted to the Union in connection with the negotiations culminating in the agreement to grant the second lien, represented the Debtor's net worth to be $13,669,000.00. The financial statement is attached as Exhibit 1 to Central States' memorandum in opposition to the Debtor's motion for partial summary judgment filed September 29, 1993.

Summary judgment should be granted only where it appears that there is no genuine dispute as to material facts and the moving party is entitled to judgment as a matter of law. Federal Rules of Civil Procedure 56(c); Federal Rules of Bankruptcy Procedure 7056; *Fields v. Gander,* 734 F.2d 1313, 1314 (8th Cir.1984); *Toshiba Am., Inc. v. Video King, Inc. (In re Video King, Inc.),* 100 B.R. 1008, 1012 (Bankr.N.D.Ill.1989). In determining whether a genuine issue of material fact exists, the Court must view the facts in the light most favorable to the party opposing the motion for summary judgment and must give that party the benefit of all reasonable inferences drawn from the underlying facts. *AgriStor Leasing v. Farrow,* 826 F.2d 732, 734 (8th Cir.1987); *Fields v. Gander,* 734 F.2d at 1314. To be material, the fact in dispute must affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

A party opposing a motion for summary judgment may not rely upon the mere allegations of its pleadings but must instead set forth, by affidavit or otherwise, specific facts showing that a genuine issue exists for trial. Fed.R.Civ.P. 56(e); Fed.R.Bankr.P. 7056. *See Chauffeurs, Teamsters & Helpers Local Union 238 v. C.R.S.T., Inc.,* 795 F.2d 1400, 1402–03 (8th Cir.), *cert. denied,* 479 U.S. 1007, 107 S.Ct. 647, 93 L.Ed.2d 702 (1986).

11 U.S.C. § 547(f) (1988) provides a presumption of insolvency as follows:

For the purposes of this section, the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition..

The financial statement is sufficient evidence to rebut the presumption of insolvency and requires the Debtor to introduce evidence of insolvency. Therefore, a genuine issue of material fact exists, and the Debtor's motion for partial summary judgment is denied.

### Central States' Motion for Summary Judgment

■ Central States argue in their motion for summary judgment that even if all of the elements of a preferential transfer are present and no defenses allowed by 11 U.S.C. § 547(c) exist, the Debtor may not recover a preferential transfer because the Debtor has not complied with the provisions of 11 U.S.C. § 1113.

11 U.S.C. § 1113 (1988) provides in relevant part as follows:

(a) The debtor in possession, or the trustee if one has been appointed under the provisions of this chapter, ... may assume or reject a collective bargaining agreement only in accordance with the provisions of this section.

(b)(1) Subsequent to filing a petition and prior to filing an application seeking rejection of a collective bargaining agreement, the debtor in possession or trustee (hereinafter in this section "trustee" shall include a debtor in possession), shall

(A) make a proposal to the authorized representative of the employees covered by such agreement, based on the most complete and reliable information available at the time of such proposal, which provides for those necessary modifications in the employees benefits and protections that are necessary to permit the reorganization of the debtor and assures that all creditors, the debtor and all of the affected parties are treated fairly and equitably; and

(B) provide, subject to subsection (d)(3), the representative of the employees with such relevant information as is necessary to evaluate the proposal.

(2) During the period beginning on the date of the making of a proposal provided for in paragraph (1) and ending on the date of the hearing provided for in subsection (d)(1), the trustee shall meet, at reasonable times, with the authorized representative to confer in good faith in attempting to reach mutually satisfactory modifications of such agreement.

(c) The court shall approve an application for rejection of a collective bargaining agreement only if the court finds that—

(1) the trustee has, prior to the hearing, made a proposal that fulfills the requirements of subsection (b)(1);

(2) the authorized representative of the employees has refused to accept such proposal without good cause; and

(3) the balance of the equities clearly favors rejection of such agreement.

. . . .

(f) No provision of this title shall be construed to permit a trustee to unilaterally terminate or alter any provisions of a collective bargaining agreement prior to compliance with the provisions of this section.

Section 1113 was passed in response to a decision of the United States Supreme Court in the case of *National Labor Relations Bd. v. Bildisco & Bildisco*, 465 U.S. 513, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984). This section is discussed in 5 *Collier on Bankruptcy* ¶ 1113.01[2] (Lawrence P. King ed., 15th ed. 1993):

Section 1113 is Congress' response to *National Labor Relations Board v. Bildisco & Bildisco*. Section 1113 is effective with respect to cases commenced on or after July 10, 1984, the date of enactment of Public Law No. 98–353, and addresses the two principal issues dealt with by the Supreme Court in *Bildisco & Bildisco*, namely, (i) the obligation of a trustee or debtor in possession to adhere to the terms of a collective bargaining agreement pending entry of an order by the bankruptcy court authorizing rejection or modification of such agreement, and (ii) the standard by which a bankruptcy court must determine whether the trustee or debtor in possession should be permitted to reject a collective bargaining agreement.

(footnotes omitted). *See also In re Roth American, Inc.*, 975 F.2d 949, 955–56 (3d Cir.1992); *United Steelworkers v. Unimet Corp. (In re Unimet Corp.)*, 842 F.2d 879,

881–82 (6th Cir.), *cert. denied,* 488 U.S. 828, 109 S.Ct. 81, 102 L.Ed.2d 57 (1988).

Central States argue that a preference action under section 547 against a party to an unrejected collective bargaining agreement is an attempt to unilaterally terminate or alter the provisions of the collective bargaining agreement. Since section 1113 provides the exclusive method for altering or rejecting a collective bargaining agreement, Central States argue that no cause of action under section 547 can exists unless the provisions of section 1113 are satisfied. Central States focus their argument on section 1113(f) which provides that:

> No provision of this title shall be construed to permit a trustee to unilaterally terminate or alter any provisions of a collective bargaining agreement....

■ The core of Central States' argument is based on the assumption that recovery of a prepetition preference from a creditor who is a party to a collective bargaining agreement is an alteration of that agreement. This assumption is incorrect because the prohibition against altering the terms of a collective bargaining agreement refers necessarily to altering postpetition liability and not payment of prepetition liabilities. If a preference is recovered from Central States, the Debtor remains liable to Central States for the amount of the recovery and Central States' claims will be satisfied from available assets. The same principle applies if the Debtor assumes the collective bargaining agreement or if the Debtor continues in business postpetition without rejecting the collective bargaining agreement. The postpetition liability of the Debtor is unaltered, but whether the liability is paid depends on the availability of assets to be distributed pursuant to the distribution provisions of the Bankruptcy Code. *See In re Roth American, Inc.,* 975 F.2d 949 (3d Cir.1992); *In re Armstrong Store Fixtures Corp.,* 135 B.R. 18, 22 (Bankr.W.D.Pa.1992); *Shipwrights, Joiners & Caulkers Local 2071 of the United Brotherhood of Carpenters AFL–CIO v. Uniflite, Inc. (In re Murray Industries, Inc.),* 110 B.R. 585, 588 (Bankr.M.D.Fla.1990). Section 1113 was intended to govern postpetition relationships in chapter 11 and has no practical application in a liquidating chapter 11 where no business activities are conducted postpetition.

■ Central States argue further that section 1113 takes precedence over all other provisions of the Bankruptcy Code and cite as their principal authority the case of *United Steelworkers v. Unimet Corp. (In re Unimet Corp.),* 842 F.2d 879, 881–82 (6th Cir.), *cert. denied,* 488 U.S. 828, 109 S.Ct. 81, 102 L.Ed.2d 57 (1988). In *Unimet,* the debtor argued that section 1113 did not require payment of insurance premiums as an administrative expense even though payments were required to be paid under a collective bargaining agreement. The debtor argued that the insurance premiums did not qualify for a priority status because the premiums were not administrative expenses under 11 U.S.C. §§ 503(b) and 507(a)(1). The bankruptcy court determined that the claims for insurance premiums did not arise postpetition and were not necessary for the preservation of the estate and, therefore, were not administrative expenses.

The Sixth Circuit Court of Appeals reversed the lower court and concluded that payments due under the collective bargaining agreement were payable even though the claims did not qualify as administrative expenses under 11 U.S.C. §§ 503(b) and 507(a)(1). Several subsequent district and bankruptcy court decisions have relied upon *Unimet* for the proposition that regardless of whether claims under unrejected collective bargaining agreements are administrative expenses within the meaning of section 503, such claims are entitled to a "superpriority" or automatic first priority pursuant to section 1113(f). *See In re Arlene's Sportswear,* 140 B.R. 25, 28 (Bankr.D.Mass.1992); *In re Golden Distribs., Ltd.,* 134 B.R. 760, 765 (Bankr. S.D.N.Y.1991), *aff'd,* 152 B.R. 35 (S.D.N.Y. 1992); *In re St. Louis Globe–Democrat, Inc.,* 86 B.R. 606, 609–610 (Bankr.E.D.Mo.1988).

The Debtor relies on the case of *In re Roth American, Inc.,* 975 F.2d 949 (3d Cir. 1992). In *Roth American,* the union filed administrative claims for vacation and severance pay due under a collective bargaining agreement. The district court affirmed the bankruptcy court's grant of administrative priority for only the postpetition benefits

earned as compensation for services rendered. The union contended that section 1113 grants its claim first priority since section 1113 provides that no provisions of the Bankruptcy Code shall be construed to permit a trustee to unilaterally terminate or alter any provision of a collective bargaining agreement prior to compliance with the provisions of section 1113. The union equated the failure to give its claim first priority to a unilateral termination or alteration of the collective bargaining agreement. *Roth American,* 975 F.2d at 954–55.

By affirming the district court's decision, the Third Circuit Court of Appeals rejected the reasoning in *Unimet.* The court determined that:

> [T]here is no indication either from the language or the legislative history of section 1113 that Congress intended to address the priority to be given claims based on a collective bargaining agreement. Of most significance is the fact that no language in section 1113 addresses the priority to be accorded claims.

*Roth American,* 975 F.2d at 956. *See also In re Armstrong Store Fixtures Corp.,* 135 B.R. 18, 22 (Bankr.W.D.Pa.1992) ("§ 1113(f) does not supersede and render § 507(a) inoperative when determining the priority to be accorded to employee claims"); *Shipwrights, Joiners & Caulkers Local 2071 of the United Brotherhood of Carpenters AFL–CIO v. Uniflite, Inc. (In re Murray Industries, Inc.),* 110 B.R. 585, 588 (Bankr.M.D.Fla.1990) ("the better view is one which reconciles § 507 with § 1113 and that § 1113 governs only the conditions under which a Debtor–in–Possession may modify or reject a collective bargaining agreement, but that payment of employment-related prepetition obligations is governed exclusively by § 507").[1] In addition, if section 1113 were found to supersede section 507 an anomalous situation would result in that a prepetition obligation in a chapter 11 case would receive unlimited first priority where the same prepetition obligation in a chapter 7 case would only receive a limited third or fourth priority.

 The reasoning in the *Roth* opinion and those cases which adhere to it is more persuasive to this Court. The goals of section 547 are to deter the race of diligence of creditors to dismember the debtor before bankruptcy and to promote equality of distribution. *See Union Bank v. Wolas,* —— U.S. ——, ——, 112 S.Ct. 527, 533, 116 L.Ed.2d 514 (1991). The goal of section 1113 is to preclude an employer from using bankruptcy law to unilaterally reject or modify a collective bargaining agreement. *In re Roth American, Inc.,* 975 F.2d at 956. *See also Shugrue v. Air Line Pilots Ass'n, Int'l (In re Ionosphere Clubs, Inc.),* 922 F.2d 984 (2d Cir.1990), *cert. denied,* —— U.S. ——, 112 S.Ct. 50, 116 L.Ed.2d 28 (1991). The concerns addressed by 11 U.S.C. §§ 547 and 1113 are distinct. If Congress had intended to implement changes in priority of claims or provide additional defenses to preference actions against participants in a collective bargaining agreement it would have done so explicitly.

Central States cite no authority in support of their argument. In fact, the only case research reveals that addresses the issue of whether section 1113 bars a preference action against a party to a collective bargaining agreement was decided adversely to Central States. *Sterling Die Casting Co. v. Local 365 UAW Welfare & Pension Fund (In re Sterling Die Casting Co.),* 118 B.R. 205 (Bankr.E.D.N.Y.1990). *Cf. Luper v. Action Indus., Inc. (In re Lee Way Holding Co.),* 113 B.R. 410 (Bankr.S.D. Ohio 1990) (chapter 11 debtor allowed to recover prepetition union dues paid postpetition under § 546 notwithstanding debtor's failure to seek modification or rejection of collective bargaining agreement).

Therefore, Central States' motion for summary judgment is denied.

IT IS SO ORDERED.

---

1. This order was subsequently vacated as moot. *Shipwrights, Joiners & Caulkers Local 2071 of the United Brotherhood of Carpenters AFL–CIO v. Uniflite, Inc. (In re Murray Industries, Inc.),* 140 B.R. 298 (M.D.Fla.1992).