In re ACORN BUILDING
COMPONENTS, INC.,
Debtor.

INTERNATIONAL UNION, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW) and its Local 2194, Appellants,

v.

ACORN BUILDING COMPONENTS,
INC., Appellee.

No. 94–CV–71507–DT.

United States District Court,
E.D. Michigan,
Southern Division.

Aug. 9, 1994.

Michael B. Nicholson, UAW Intern. Union, Legal Dept., Detroit, MI, for appellants.

Phillip J. Shefferly, Shefferly & Silverman, Southfield, MI, for appellee.

## MEMORANDUM OPINION AND ORDER

ANNA DIGGS TAYLOR, District Judge.

This matter comes before the Court pursuant to 28 U.S.C. § 158(a).[1] The International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, and its Local 2194 appeal from the April 6, 1994 order of the United States Bankruptcy Court of this District which denied the Union's motion under 11 U.S.C. § 1113(f)[2] to compel Appellee Acorn to pay both pre- and post-petition wages and benefits as required by a collective bargaining agreement, with priority equivalent to administrative expenses. Appellant contends that § 1113(f) grants to all provisions of a collective bargaining agreement a "super-priority," equivalent to an administrative expense priority.

### I.

In December 1990, Acorn and the Union entered into a collective bargaining agreement covering Acorn's 200 to 500 production and maintenance employees. The agreement established the wages, hours, and terms and conditions of employment of the bargaining unit, including vacation pay, holiday pay, and health and pension benefits. The agreement was to expire, by its terms, on April 23, 1994.

Appellee Acorn filed a voluntary petition for protection under Chapter 11 of the Bankruptcy Code on April 9, 1992. Thereafter, Appellee proposed several amendments to the agreement, all of which were rejected by Appellant. Appellee then filed its application to reject the agreement on June 24, 1992. In response, the Union filed a motion to compel the payment of wages and benefits payable under the agreement, both pre- and post-petition, on June 30, 1992. Of paramount concern to Appellant are $527,609.77 in pre-

---

1. "The district courts of the United States shall have jurisdiction to hear appeals from final judgments, orders, and decrees, and, with leave of the court, from interlocutory orders and decrees, of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title. An appeal under this subsection shall be taken only to the district court for the judicial district in which the bankruptcy judge is serving." 28 U.S.C. § 158(a).

2. "No provision of this title shall be construed to permit a trustee to unilaterally terminate or alter any provisions of a collective bargaining agreement prior to compliance with the provisions of this section." 11 U.S.C. § 1113(f).

petition medical claims and $137,724.68 in post-petition medical claims made on behalf of the bargaining unit, pursuant to the agreement.[3]

The Bankruptcy Court approved the Debtor's rejection of the agreement on July 30, 1992, at the same time finding Appellant's motion under § 1113(f) moot, without further explanation. This Court remanded Appellant's § 1113(f) motion, finding that the Bankruptcy Court had erred in denying the motion as moot. The Bankruptcy Court then issued an order denying International Union's motion on April 6, 1994. 168 B.R. 169. The Union does not appeal the rejection of the agreement, but does appeal the denial of its motion to compel payment.

The Appellant Union argues that the Bankruptcy Court erred in denying the motion to compel Appellee Acorn to comply with the obligations of the agreement, both pre- and post-petition. Appellant argues that the Bankruptcy Court conceded that § 1113(f) requires a debtor to pay as an administrative expense those wages and benefits provided for by a collective bargaining agreement that arise after the filing of a petition in bankruptcy, yet failed to issue an order to that effect. Additionally, Appellant argues that controlling case law in this Circuit requires that Appellant's pre-petition claims also be given administrative expense priority.

## II.

■ Until 1984, the case law developed in this area appears to have become increasingly emphatic that a collective bargaining agreement was no longer enforceable when an employer entered bankruptcy. Congress, however, by the enactment of 11 U.S.C.

§ 1113(f) clearly reversed that trend, and the statute plainly supports the Union's argument that both pre- and post-petition wages and benefits under the agreement must be awarded a priority equal to that of administrative expenses. In *NLRB v. Bildisco and Bildisco*, 465 U.S. 513, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984), the Supreme Court decision which Congress overruled, two major issues were decided. First, that a collective bargaining agreement was included within the "executory contract" language of 11 U.S.C. § 365(a), and thus could be rejected by a debtor-in-possession. Second, a debtor-in-possession did not violate the National Labor Relations Act when it unilaterally altered or terminated any provision of a collective bargaining agreement. *Bildisco* held that, in order to effectuate the Bankruptcy Code's overall goal of granting the debtor-in-possession flexibility and protection from creditors, "the filing of the petition in bankruptcy means that the collective-bargaining agreement is no longer enforceable, and may never be enforceable again." *Bildisco*, 465 U.S. 513, 532, 104 S.Ct. 1188, 1199.

Congress reacted swiftly to this decision by enacting 11 U.S.C. § 1113, effectively overturning the *Bildisco* decision[4]. The statute also provides explicit terms for the assumption or rejection of a collective bargaining agreement by a trustee or debtor-in-possession[5], and provides that a debtor-in-possession may not terminate or alter any provision of a collective bargaining agreement prior to compliance with that section.

The leading case on this issue in the Sixth Circuit is *United Steelworkers of America v. Unimet Corporation*, 842 F.2d 879 (6th Cir. 1988).[6] *Unimet* dealt with insurance premi-

---

**3.** Pursuant to an order entered by the Bankruptcy Court on September 30, 1992, Appellant has waived any claims on the collateral of Bank One, Appellee's senior secured creditor.

**4.** "I urge my colleagues to support H.R. 5174, the Bankruptcy Amendments Act and particularly that provision which overturns the Supreme Court decision, NLRB against Bildisco, which permits a company to reorganize its business under chapter 13 of the bankruptcy code to abrogate its collective-bargaining agreements with its employees." 130 Cong. rec. H1830 (March 21, 1984), statements by Mr. Fauntroy.

**5.** "The debtor in possession ... may assume or reject a collective bargaining agreement only in accordance with the provisions of this section." 11 U.S.C. § 1113(a).

**6.** The progeny of the *Unimet* decision include: *In re Arlene's Sportswear*, 140 B.R. 25 (Bkrtcy. D.Mass.1992) (pre-petition trust fund claim granted super-priority status by § 1113(f)), *In re Golden Distributors, Ltd.*, 134 B.R. 760 (Bkrtcy. S.D.N.Y.1991) (§ 1113(f) creates super-priority for all claims, pre- or post-petition, under a collective bargaining agreement), *Matter of Canton Castings*, 103 B.R. 874 (Bkrtcy.N.D.Ohio 1989)

ums for retiree benefits under a collective bargaining agreement. The United States Court of Appeals for the Sixth Circuit found that the retiree premiums were not payable as an administrative expense under § 503,[7] but that "qualification as an administrative expense is not necessary for the union to prevail." *Unimet* at 884. The Court ruled that the debtor-in-possession "was required to comply with *all* provisions of the collective bargaining agreement *unless and until rejection was permitted by the court.*" *Id.* at 882 (emphasis in original).

### III.

As did *Unimet,* the case at bar concerns a debtor-in-possession's attempt to utilize Chapter 11 for protection from the agreement made on behalf of its employees through a collective bargaining agreement. This Court finds that the Bankruptcy Court erred in its application of *Unimet* in this case, and must be reversed.

In its order rejecting the Union's claims for both pre- and post-petition obligations, the Bankruptcy Court held that *Unimet* did not address the priority of pre-petition claims, but did extend § 1113(f) to raise post-petition claims to the level of an administrative expense priority. By that logic then, Appellant's motion to compel payment of Acorn's post-petition claims as an administrative expense priority should have been granted. Accordingly, that part of the Bankruptcy Court's order which denies Appellant's motion to compel payment of the post-petition obligations as an administrative expense is reversed.

In addition, this Court must reverse that part of the Bankruptcy Court's order which denies Appellant's motion to compel payment of all pre-petition claims as administrative expenses. That court ruled that to allow

pre-petition claims to be raised to the level of administrative expenses would violate the holding of *Unimet.* However, the claims *Unimet* dealt with arose, as did many of these, before the petition was filed. To that extent, they were pre-petition obligations. Thus, if *Unimet* does stand for the proposition that claims under a collective bargaining agreement are afforded protection equivalent to administrative expenses, then pre-petition claims must be included.

The language of the *Unimet* Court did not distinguish between claims arising before or after the filing of the Chapter 11 petition. *Unimet* simply states that § 1113(f) requires a debtor-in-possession to · comply "with *all* provisions of the collective bargaining agreement *unless· and until rejection was permitted by the court.*" *In re Unimet,* 842 F.2d 879, 882 (6th Cir.1988). This interpretation of the statute is supported by § 1113(e), which provides for emergency interim relief from a collective bargaining agreement before rejection is approved. If compliance with the collective bargaining agreement were not required prior to court approved rejection, an interim relief clause would not be necessary.[8]

The Bankruptcy Court, in ruling that violations of § 1113 must be prioritized according to §§ 503 and 507, followed the reasoning of *In re Armstrong Store Fixtures Corp.,* 135 B.R. 18 (Bkrtcy W.D.Pa.1992). In so doing, the Bankruptcy Court not only misunderstood *Unimet,* but also the more recent *In re Ionosphere,* 922 F.2d 984 (2nd Cir.1990).

■ The *Ionosphere* court followed this Circuit's reasoning in *Unimet* by stating that "Congress intended that a collective bargaining agreement remain in effect and that the collective bargaining process continue after the filing of a bankruptcy petition unless and

(debtor bound to terms of collective bargaining agreement until rejected).

7. "... the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case...." 11 U.S.C. § 503(b)(1)(A).

8. "If during a period when the collective bargaining agreement continues in effect, and if

essential to the continuation of the debtor's business, or in order to avoid irreparable damage to the estate, the court, after notice and a hearing, may authorize the trustee to implement interim changes in the terms, conditions, wages, benefits, or work rules provided by a collective bargaining agreement ... The implementation of such interim changes shall not render the application for rejection moot." 11 U.S.C. § 1113(e).

until the debtor complies with the provisions of § 1113." *Ionosphere* at 990. The *Ionosphere* court also stated that § 1113(f) "was meant to prohibit the application of any other provision of the Bankruptcy Code when such application would permit a debtor to achieve unilateral termination or modification of a collective bargaining agreement without meeting the requirements of § 1113." *Id.* at 991.

To subject Appellant's claims to the priority schedule of § 507 would result in the permission of a unilateral termination or modification of the terms of the agreement without meeting statutory requirements. Some of the employee benefit claims in question would be reduced, and others denied, despite the contract under which those employees had continued to work for the Debtor.[9]

Ultimately, this Court finds that compelling Appellee Acorn to pay both pre- and post-petition wages and benefits under the agreement at the level of an administrative expense priority is consistent with the plain intent of Congress.[10]

### IV.

Accordingly;

**IT IS ORDERED** that the Bankruptcy Court's Order denying Appellant's motion be and hereby is **REVERSED**, and Appellant International Union's Motion to Compel Appellee Acorn to Pay All Claims Under the Agreement as an Administrative Expense is **GRANTED**.

**IT IS SO ORDERED.**

---

9. 11 U.S.C. § 507 provides "(a)(1) First, administrative expenses allowed under section 503(b) ... (3) Third, allowed unsecured claims for wages, salaries, or commissions, including vacation, severance, and sick leave pay-(A) earned by an individual within 90 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first; but only (B) to the extent of $2,000 for each such individual."

10. Mr. Jontz: "... action to terminate all health and life insurance benefits for retirees immediately upon filing for reorganization came as a shock to those of us who thought the Bildisco legislation had settled the question ...," 133 Cong.Rec. H1256, 1258 (1987) statements by various Congressmen on The Retiree Benefits Security Act of 1987 (11 U.S.C. § 1114).